[This decision has been published in *Ohio Official Reports* at 91 Ohio St.3d 474.]

OHAYON ET AL., APPELLANTS, *v.* SAFECO INSURANCE COMPANY OF ILLINOIS, APPELLEE.

[Cite as *Ohayon v. Safeco Ins. Co. of Illinois*, 2001-Ohio-100.]

*Insurance—Motor vehicles—Action by insured against insurance carrier for payment of underinsured motorist benefits is a cause of action sounding in contract, rather than tort, even though tortious conduct triggers applicable contractual provisions—1 Restatement of the Law 2d, Conflict of Law (1997), Section 205, applied.*

(No. 00-262—Submitted November 29, 2000—Decided May 30, 2001.)

APPEAL from the Court of Appeals for Summit County, No. 19617.

————————————

SYLLABUS OF THE COURT

1. An action by an insured against his or her insurance carrier for payment of underinsured motorist benefits is a cause of action sounding in contract, rather than tort, even though it is tortious conduct that triggers applicable contractual provisions. (*Landis v. Grange Mut. Ins. Co.* [1998], 82 Ohio St.3d 339, 341, 695 N.E.2d 1140, 1141, followed.)

2. Questions involving the nature and extent of the parties' rights and duties under an insurance contract's underinsured motorist provisions shall be determined by the law of the state selected by applying the rules in Sections 187 and 188 of the Restatement of the Law 2d, Conflict of Laws (1971). (1 Restatement of the Law 2d, Conflict of Laws [1971], Section 205, applied.)

————————————

**COOK, J.**

**{¶ 1}** In their sole proposition of law, appellants ask this court to hold that when an insured under an automobile insurance policy issued in Ohio is injured in an automobile accident in another state, coverage under the uninsured/underinsured motorist provisions of the policy is determined by the law of the state in which the injury occurred. For the following reasons, we decline to adopt this proposition and instead affirm the judgment of the court of appeals.

## I. Background

**{¶ 2}** In 1996, Safeco Insurance Company of Illinois ("Safeco") issued an automobile insurance policy to Summit County residents Jacob and Brenda Ohayon. The policy covered three vehicles and provided underinsured ("UIM") motorist coverage limited to $100,000 per person and $300,000 per occurrence. The policy contained a setoff provision providing that "the limit of liability [for UIM coverage] shall be reduced by all sums paid because of **bodily injury** by or on behalf of persons or organizations who may be legally responsible." (Boldface *sic.*) The policy also contained an antistacking clause providing that "[i]n no event shall the limit of liability for two or more vehicles or two or more policies be added together, combined, or stacked to determine the limit of insurance coverage available to injured persons."

**{¶ 3}** In 1996, Jacob and Brenda's son Jonathon—who lived at the Ohayons' Ohio residence—visited Pennsylvania, where he was struck by an automobile. Jonathon sustained serious leg injuries and eventually settled his claim against the tortfeasor for the $100,000 limit of the tortfeasor's liability coverage.

**{¶ 4}** Jacob, Brenda, and Jonathon Ohayon filed a complaint against Safeco in the Summit County Court of Common Pleas, seeking a declaratory judgment that they were entitled to recover benefits under the UIM provisions of their Safeco policy. The Ohayons sought a declaration (1) that Pennsylvania tort law applied to Jonathon's UIM claims; (2) that Pennsylvania law entitled Jonathon to stack the

coverage amounts for each vehicle insured under the Safeco policy, up to $300,000 plus interest and costs; (3) that Pennsylvania law precluded Safeco from setting off the amount already paid by the tortfeasor's insurer in settlement; (4) that due to the loss of their son's consortium, Jonathon's parents could each collect the per-person limit of the UIM coverage provided in the policy, stacking the policy limits to a combined total of $600,000; and (5) that they were entitled to attorney fees and prejudgment interest.

{¶ 5} Safeco conceded that Jacob and Brenda Ohayon were named insureds under the Safeco policy in effect on the date of the accident and admitted that Jonathon Ohayon, if a resident of the Ohayon household, was also an insured. Safeco denied, however, that the plaintiffs could recover the UIM benefits that they sought under the applicable policy provisions.

{¶ 6} Following discovery, the Ohayons moved for partial summary judgment on the coverage issues. In this motion, the Ohayons reiterated their claims that under Ohio's choice-of-law analysis, Pennsylvania law controlled, that therefore Safeco was precluded from setting off the funds that Jonathon had already received in settlement, and that Pennsylvania law permitted the Ohayons to stack their claims. In its response, Safeco contended that R.C. 3937.18 applied and entitled it to judgment as a matter of law.

{¶ 7} The common pleas court held that the Ohayons' claims "are largely based upon tort law and thus tort law governs," and agreed with the Ohayons that Pennsylvania law applied. The court thus concluded that, in spite of the antistacking provision in the Safeco policy, Pennsylvania's Motor Vehicle Financial Responsibility Law, 75 Pa.Cons.Stat. 1738, permitted the Ohayons to stack the stated limits of UIM coverage. The trial court also concluded that Pennsylvania law precluded Safeco from setting off the amount already paid by the tortfeasor's insurer in settlement. Safeco appealed the trial court's order to the Summit County Court of Appeals.

**{¶ 8}** The court of appeals unanimously reversed the lower court's decision, concluding that the trial court erred when it applied Pennsylvania law instead of Ohio law to determine the UIM coverage issues under the insurance contract. Though the court of appeals determined that Ohio's UIM law was the proper law to apply, it concluded that a material fact remained in dispute regarding *which version* of Ohio's UIM statute should apply. Accordingly, the court of appeals remanded the cause. The Ohayons appealed, and the cause is before this court upon the allowance of a discretionary appeal.

## II. Choice of Law

**{¶ 9}** Because the Ohayons seek a declaration that Pennsylvania law should apply to resolve the coverage issues in this action, and because the incident underlying their cause of action occurred in Pennsylvania, resort to Ohio's choice-of-law rules is necessary. Our state's choice-of-law rules "do not themselves determine the rights and liabilities of the parties, but rather guide decision as to which local law rule will be applied to determine these rights and duties." 1 Restatement of the Law 2d, Conflict of Laws (1971) 3, Section 2, Comment *a*(3).

**{¶ 10}** The Restatement's choice-of-law rules depend on the "classification of a given factual situation under the appropriate legal categories and specific rules of law." *Id*. at 18, Section 7, Comment *b*. We must *classify* the Ohayons' cause of action before we answer the choice-of-law question raised in their complaint because different choice-of-law rules apply depending on whether the cause of action sounds in *contract* or in *tort*. Compare *Schulke Radio Prod., Ltd. v. Midwestern Broadcasting Co.* (1983), 6 Ohio St.3d 436, 6 OBR 480, 453 N.E.2d 683 (contract), with *Morgan v. Biro Mfg. Co., Inc.* (1984), 15 Ohio St.3d 339, 15 OBR 463, 474 N.E.2d 286 (tort).

**{¶ 11}** We apply different choice-of-law principles to actions sounding in contract than to actions sounding in tort for several reasons. For one, the parties to a contract are largely free to negotiate the law to be applied to disputes arising

thereunder. See 1 Restatement of Conflicts at 15, Section 6, Comment *g*; see, also, *id.* at Section 187. In the absence of such a choice, the Restatement's contractual choice-of-law rules seek to protect the justified expectations of the contracting parties. See *id*. at 576, Section 188, Comment *b*.

{¶ 12} Unlike a contracting party, on the other hand, a negligent tortfeasor acts without a conscious regard for the legal consequences of his or her conduct—let alone the particular law to be applied to that conduct—and the parties contesting liability and/or the appropriate measure of damages for the conduct thus "have no justified expectations to protect." Restatement at 15, Section 6, Comment *g*. Accordingly, the Restatement and courts emphasize different factors when resolving choice-of-law issues in these contextually distinct legal fields.

III. Choosing the Applicable Law in Causes of Action Sounding in Contract

{¶ 13} In *Schulke, supra,* this court adopted Section 187 of the Restatement of Conflicts. *Schulke,* 6 Ohio St.3d at 438-439, 6 OBR at 482, 453 N.E.2d at 686. Section 187 provides that, subject to very limited exceptions, the law of the state chosen by the parties to a contract will govern their contractual rights and duties. The very next section of the Restatement, Section 188, enumerates factors that courts should consider in the absence of such a choice, and soon after *Schulke* this court expressly adopted Section 188 in *Gries Sports Ent., Inc. v. Modell* (1984), 15 Ohio St.3d 284, 15 OBR 417, 473 N.E.2d 807, syllabus.

{¶ 14} In *Gries*, minority shareholders in Cleveland Browns, Inc., a Delaware corporation, filed an action in Ohio seeking specific performance of a voting agreement that they had executed over fifteen years earlier with Arthur Modell, the majority shareholder. The parties to the voting agreement had not chosen a particular forum's law to be applied to any controversies arising thereunder. If Delaware law applied to the minority shareholders' cause of action, the voting agreement would have statutorily lapsed by the time the minority shareholders brought their action and thus could not have been specifically

performed. Accordingly, this court had to determine which forum's law applied before assessing the merits of the minority shareholders' complaint.

{¶ 15} To resolve the choice-of-law issue, the *Gries* court examined the factors in Section 188 of the Restatement. Section 188 provides that, in the absence of an effective choice of law by the parties, their rights and duties under the contract are determined by the law of the state that, with respect to that issue, has "the most significant relationship to the transaction and the parties." Restatement at 575, Section 188(1). To assist in making this determination, Section 188(2)(a) through (d) more specifically provides that courts should consider the place of contracting, the place of negotiation, the place of performance, the location of the subject matter, and the domicile, residence, nationality, place of incorporation, and place of business of the parties.

{¶ 16} Applying the foregoing principles to the voting agreement executed by the shareholders in *Gries*, this court determined:

"[T]he place of contracting was Ohio, the place of negotiation was Ohio, the place of performance was Ohio, the location of the subject matter of [the] contract was Ohio, the place of incorporation was Delaware, and the place of business of the parties was Ohio. The conclusion is inescapable that Ohio 'bears the most significant relationship to the contract.' " *Gries*, 15 Ohio St.3d at 287, 15 OBR at 420, 473 N.E.2d at 810, quoting *Schulke,* 6 Ohio St.3d at 438, 6 OBR at 482, 453 N.E.2d at 685-686.

{¶ 17} Accordingly, this court reversed the court of appeals' decision to apply Delaware law.

IV. The Application of *Gries* and Section 188 to Insurance Coverage Disputes:

*Nationwide Mut. Ins. Co. v. Ferrin*

{¶ 18} Just over a year after *Gries*, this court applied Section 188 to resolve a choice-of-law issue that arose in a dispute over insurance coverage. *Nationwide Mut. Ins. Co. v. Ferrin* (1986), 21 Ohio St.3d 43, 44-45, 21 OBR 328, 330, 487

6

N.E.2d 568, 569 (citing *Gries* and Section 188 as "controlling law"). The application of Ohio's contractual choice-of-law analysis to such a dispute was not a surprising development, considering that this court has long held that an insurance policy is a *contract* between the insurer and the insured. *Ohio Farmers Ins. Co. v. Cochran* (1922), 104 Ohio St. 427, 135 N.E. 537, syllabus.

{¶ 19} In *Ferrin*, an employee of a trucking company headquartered in Florida drove a tractor and attached trailer from Florida on his way to Michigan on company business. One weekend during this trip, the driver separated the trailer from the tractor in Dayton, Ohio, and drove the tractor to his parents' residence in Orient for a personal visit. On his way to his parents' home, the driver had an accident. His employer's insurer filed a complaint in Ohio seeking a declaration that the driver was not covered by the insurance policy that it had issued to the driver's employer. The employer's insurance policy covered employees using covered vehicles "with [the employer's] permission," but an employee handbook indicated that the driver should not have been operating the company tractor for his personal use.

{¶ 20} Because the applicable insurance policy was issued to the driver's Florida employer, but the insurer's complaint was filed here in Ohio, it was necessary for the trial court to determine which state's law would apply to resolve the controversy about coverage. The trial court determined that Florida law applied and that under Florida law the driver was indeed covered by the policy issued to his employer. Both the court of appeals and this court agreed. Applying the factors enumerated in Section 188 of the Restatement, this court noted in *Ferrin* that the insurance contract had been issued to the driver's Florida employer at the employer's Florida address. *Id.* at 45, 21 OBR at 330, 487 N.E.2d at 570. Thus Florida law controlled the question of whether the policy covered the employee during his personal trip to see his parents. *Id.*

**{¶ 21}** After summarizing Ohio choice-of-law precedent in contract cases, the *Ferrin* court proceeded to apply Florida law to the merits of the case. The *Ferrin* court observed that, at the time, Florida courts apparently adhered to the "initial permission rule." *Id.* at 45, 21 OBR at 330, 487 N.E.2d at 570. Under that rule, once an owner gave express or implied consent to another to operate the owner's automobile, the owner became liable for its negligent operation no matter where the driver went. *Id.*, citing *Boggs v. Butler* (1937), 129 Fla. 324, 326, 176 So. 174, 176. Florida courts had applied the *Boggs* rule both with respect to the vehicle owner's liability *and* with respect to the scope of the owner's insurance coverage. *Ferrin* at 46, 21 OBR at 331, 487 N.E.2d at 571. For these reasons, this court affirmed the lower courts' decision in favor of coverage. *Id.*

**{¶ 22}** In *Ferrin*, the application of Florida law ultimately resulted in an outcome favorable to the driver-insured. If, however, the insurance policy had been issued in a state that did not adhere to the "initial permission rule," and if a consideration of Section 188's factors had resulted in applying that state's law, the final outcome of the insurer's declaratory judgment action may have been different. We note this possibility simply to underscore the fact that Section 188's choice-of-law methodology does not, in and of itself, favor either insureds or insurers in disputes over insurance coverage. As noted above, the choice-of-law rules contained in Section 188 do not themselves determine the actual rights and liabilities of the parties to a contract; they simply decide which forum's local law should apply in determining those rights and liabilities. See Restatement at 3, Section 2, Comment *a*(3). The factors enumerated in Section 188 are keyed to the justifiable expectations of *the parties* to the contract, not to the ultimate benefit of one party over another. See *id.* at 15, Section 6, Comment *g*.

**{¶ 23}** Section 188's choice-of-law methodology focuses on the place of contracting, the place of negotiation, the place of performance, the location of the subject matter, and the domicile of the contracting parties. In insurance cases, this

focus will often correspond with the Restatement's view that the rights created by an insurance contract should be determined "by the local law of the state which the parties understood was to be the *principal location of the insured risk during the term of the policy*, unless with respect to the particular issue, some other state has a more significant relationship * * * to the transaction and the parties." (Emphasis added.) Restatement at 610, Section 193. "[I]n the case of an automobile liability policy, the parties will usually know beforehand where the automobile will be garaged at least during most of the period in question." *Id.* at 611, Comment *b*. The principal location of the insured risk described in Section 193 neatly corresponds with one of Section 188's enumerated factors—the *location of the subject matter of the contract*.

V. The Application of Section 188, *Gries*, and *Ferrin* to Choice-of-Law Issues

Arising in Disputes Over UIM Coverage

{¶ 24} After *Ferrin*, application of the Restatement's contractual choice-of-law provisions to liability insurance cases is no longer a subject of dispute in Ohio. See *Babcock & Wilcox Co. v. Arkwright-Boston Mfg. Mut. Ins. Co.* (N.D.Ohio 1992), 867 F.Supp. 573, 577 (deciding, in a diversity action regarding liability coverage, that "the determinative Ohio choice of law rules" are set forth in *Ferrin* and *Gries*). Similarly, resort to the Restatement's *contractual* choice-of-law provisions in declaratory judgment actions seeking UIM coverage should no longer be a subject of dispute. This court has determined that an action by an insured against his or her insurance carrier for payment of UIM benefits is a cause of action sounding in contract, rather than tort, even though it is tortious conduct that triggers applicable contractual provisions. *Landis v. Grange Mut. Ins. Co.* (1998), 82 Ohio St.3d 339, 341, 695 N.E.2d 1140, 1141; see, also, *Miller v. Progressive Cas. Ins. Co.* (1994), 69 Ohio St.3d 619, 624, 635 N.E.2d 317, 321 ("We recognize that an action by an insured against an insurance carrier for payment of uninsured or underinsured motorist benefits is a cause of action sounding in contract"); *Kurent*

*v. Farmers Ins. of Columbus, Inc.* (1991), 62 Ohio St.3d 242, 245, 581 N.E.2d 533, 536 ("The Kurents' claim for uninsured motorist coverage is determined by their contractual relationship with Farmers"); *Motorists Mut. Ins. Co. v. Tomanski* (1971), 27 Ohio St.2d 222, 223, 56 O.O.2d 133, 134, 271 N.E.2d 924, 925 ("The right to recover under an uninsured motorist insurance policy is on the contract, not in tort").

**{¶ 25}** The Sixth Circuit Court of Appeals, in diversity actions concerning claims for UIM coverage, has likewise concluded that Ohio's choice-of-law rules derive from *Gries, Ferrin,* and Section 188. *Natl. Union Fire Ins. Co. v. Watts* (C.A.6, 1992), 963 F.2d 148, 150; see, also, *Miller v. State Farm Mut. Auto. Ins. Co.* (C.A.6, 1996), 87 F.3d 822, 824-825.

**{¶ 26}** There are several reasons to apply the same choice-of-law principles to disputes over UIM coverage that we have already applied to disputes over liability insurance coverage and other contractual disputes. For one, although our state requires insurers to offer UIM coverage, R.C. 3937.18(A)(1), and although a minimum level of coverage will arise by operation of law in the absence of such an offer, *Abate v. Pioneer Mut. Cas. Co.* (1970), 22 Ohio St.2d 161, 51 O.O.2d 229, 258 N.E.2d 429, R.C. 3937.18 does not impose upper limits on the amount of UIM coverage that may be negotiated between the parties to an insurance agreement. The limits of UIM coverage under a particular policy are subject to negotiation and modification by the contracting parties just as other terms of the contract are. Insureds can receive higher limits when they agree to pay higher premiums. The Restatement's contractual choice-of-law rules will protect the justified expectations of the parties who bargain for those terms. See Restatement at 15, Section 6, Comment *g*.

**{¶ 27}** Finally, R.C. 3937.18, unlike some Ohio statutes that apply to contractual relationships, imposes no choice of law on the parties if a dispute arises concerning the existence or extent of coverage. Compare R.C. 3937.18 with

1302.43(C)(2) (imposing the "law of the state where the goods are situated" to determine whether a fraudulent transfer or voidable preference has occurred). Courts need a predictable methodology, such as the one embodied in Restatement Section 188, to choose the applicable law if neither the parties nor the statutory scheme make that choice for them.

## VI. Application of the Foregoing Principles to the Case at Bar

**{¶ 28}** When addressing the parties' competing motions for summary judgment in this case, the trial court erroneously applied the Restatement's *tort* choice-of-law methodology. In doing so, the trial court relied not on the authority discussed above, but rather on an unreported case from the Erie County Court of Appeals, *Mayse v. Watson* (Sept. 27, 1985), Erie App. No. E-85-8, unreported, 1985 WL 7613. In *Mayse,* which was decided before this court had even applied Section 188 of the Restatement to the insurance context in *Ferrin*, the plaintiffs had an accident in Florida with an uninsured motorist. At the time, Florida's no-fault laws limited a plaintiff's potential recovery for pain, suffering, mental anguish, and inconvenience. For this reason, in their complaint against their insurer, the Mayses sought a declaration that Florida law did *not* control the parties' rights and duties under the insurance contract.

**{¶ 29}** The trial court awarded damages to the Mayses, ordered their insurer to proceed to arbitration, and determined that Florida's no-fault laws should apply—effectively limiting the Mayses' potential recovery. The Erie County Court of Appeals reversed, applying a *tort* choice-of-law analysis to conclude that Ohio law should control. In reaching this conclusion, the *Mayse* panel reasoned that the crucial issue in the case concerned *the measure of damages recoverable from the tortfeasor*: "[I]f tort law controls the factors which establish how the injury occurred and who was at fault, then tort law should also control *the measure of damages which are recoverable.*" (Emphasis added.)

**{¶ 30}** Relying on this language from *Mayse*, the trial court in this case applied a *tort* choice-of-law analysis to determine which state's law applies. The trial court thus applied the Restatement's presumption that the law of the *place of injury* controls unless another jurisdiction has a more significant relationship. See *Morgan v. Biro Mfg.,* 15 Ohio St.3d at 341-342, 15 OBR at 465, 474 N.E.2d at 289, citing 1 Restatement of Conflicts at 430, Section 146. Because Jonathon was injured in Pennsylvania, the trial court determined that Pennsylvania law should control.

**{¶ 31}** The trial court's choice-of-law analysis, however, was flawed. If the Ohayons had filed a civil action for damages against the Pennsylvania tortfeasor in an Ohio court, the *measure of damages*—if any—recoverable from the tortfeasor would have been the essential issue before the court, and our state's *tort* choice-of-law analysis, as expressed in *Mayse,* would indeed determine which local law to apply. See *id.*

**{¶ 32}** In the case at bar, however, *the measure of damages* recoverable from the Pennsylvania tortfeasor is not the critical issue. Jonathon Ohayon has already settled with the Pennsylvania tortfeasor for the $100,000 limit of the tortfeasor's liability insurance. Instead of seeking damages from the tortfeasor for liability in tort, the Ohayons now seek a declaration that they may *stack* the stated per-person limits of UIM coverage contained in their insurance contract with Safeco, and that Safeco is not entitled to *set off* the amounts Jonathon has already received in settlement. The resolution of these stacking and setoff issues is a coverage issue, separate and independent from the measure of damages assessed to the tortfeasor. The resolution of these coverage issues depends on (1) the applicable UIM provisions of the insurance contract executed by the parties, contained in Part C of that contract; and (2) the enforceability of those contractual provisions under state law. These are issues to be resolved under the law of contracts, to which the

court of appeals correctly applied the Restatement's *contract* choice-of-law analysis.

{¶ 33} The Sixth Circuit Court of Appeals agrees that *Mayse*'s tort choice-of-law analysis does not apply in a suit for UIM benefits. *Miller v. State Farm Mut. Auto. Ins. Co.,* 87 F.3d at 826. In *Miller*, the executor of a Pennsylvania insured exhausted the limits of the Ohio tortfeasor's insurance policy, then instituted a declaratory judgment action against her decedent's insurer to recover UIM benefits. The Sixth Circuit, while noting that *Mayse'*s tort choice-of-law analysis would indeed apply if the *measure of damages due the executor* had been at issue, upheld the district court's application of Ohio's *contract* choice-of-law analysis. *Id.* at 826. As the Sixth Circuit unanimously determined, "The question before us * * * does not concern the measure of damages from the underlying accident; rather, it concerns the limits on the amount of coverage which State Farm must provide under the policy it issued to [the decedent]." *Id.* The *Miller* court concluded, "[W]e view the instant case as one that sounds in contract and not in tort. * * * [T]he true heart of the matter—*i.e.*, whether to apply the 'per person' or 'per accident' limit stated in the policy—involves the interpretation of an insurance contract executed in Pennsylvania by a Pennsylvania resident, with a company licensed to do business in Pennsylvania." *Id.* at 826-827, citing *Ferrin,* 21 Ohio St.3d 43, 21 OBR 328, 487 N.E.2d 568.

{¶ 34} Like the cause of action in *Miller*, the Ohayons' declaratory judgment action against Safeco here concerns the nature and extent of the rights and duties created by the UIM provisions of their contract of insurance. Questions involving the nature and extent of the parties' rights and duties under an insurance contract's underinsured motorist provisions shall be determined by the law of the state selected by applying the rules of Sections 187 and 188 of the Restatement. *Id.* at 660, Section 205.

**{¶ 35}** For the foregoing reasons, the court of appeals correctly applied Section 188 of the Restatement to resolve the choice-of-law issue. The insurance contract was executed and delivered in Ohio by Ohio residents and an Ohio-licensed insurance agent. The policy insured vehicles principally garaged in Ohio. Under Section 188's contractual choice-of-law analysis, Ohio law should apply to determine the parties' rights and duties under that contract, including those rights and duties created by the contract terms providing UIM coverage.

VII. The Ohayons' Alternative Arguments

A. *Csulik v. Nationwide Mut. Ins. Co.*

**{¶ 36}** The Ohayons contend that the foregoing choice-of-law analysis is not necessary and that the decision of the court of appeals should be reversed on the authority of this court's recent decision in *Csulik v. Nationwide Mut. Ins. Co.* (2000), 88 Ohio St.3d 17, 723 N.E.2d 90. We disagree.

**{¶ 37}** As a threshold matter, we note that only three justices of this court joined the lead opinion in *Csulik*. See *id.*, 88 Ohio St.3d at 20-22, 723 N.E.2d at 93-94 (Douglas, J., concurring separately with the judgment of the majority "but only on a very limited basis"; Lundberg Stratton, J., dissenting, joined by Moyer, C.J., and Cook, J.). Moreover, the case at bar differs substantively from *Csulik*. In *Csulik*, the insurer agreed to pay "compensatory damages, including derivative claims, which are *due by law* to you or a relative." (Emphasis added.) *Id.* at 17, 723 N.E.2d at 91. The justices joining the lead opinion in *Csulik* deemed the phrase "due by law" ambiguous and interpreted that phrase in favor of the insured under Ohio's law for resolving contractual ambiguities. The Ohayons contend that "the same ambiguous provision exists in the policy in the present case," but this assertion is incorrect.

**{¶ 38}** The Safeco policy, in an amendatory endorsement specifically written for policies issued in Ohio, provides that the insurer "will pay damages which an **insured** is *legally entitled to recover from the owner or operator of an*

*uninsured motor vehicle or underinsured motor vehicle because of bodily injury*."
(Emphasis added; boldface *sic.*)  This provision differs on its face from the one
addressed in *Csulik* and is not ambiguous.

{¶ 39} As this court has already noted, "the phrase 'legally entitled to
recover' means the insured must be able to prove the elements of his or her claim"
against the tortfeasor.  *Kurent v. Farmers Ins. of Columbus*, 62 Ohio St.3d at 245,
581 N.E.2d at 536; see, also, *State Farm Auto. Ins. Co. v. Webb* (1990), 54 Ohio
St.3d 61, 62, 562 N.E.2d 132, 133 (noting that the very same phrase appears in R.C.
3937.18[A]).  Here, Jonathon's ability to prove the elements of his claim and
recover damages from the Pennsylvania tortfeasor is not at issue—he has already
received $100,000 in settlement with the tortfeasor's insurer.  As the Sixth Circuit
explained in *Miller*, "there is no question that Miller is 'legally entitled to recover'
underinsured motorist benefits under the policy * * *.  Miller has already exhausted
the tortfeasor's insurance."  *Id.,* 87 F.3d at 825.  Instead, the issue in the Ohayons'
declaratory judgment action is the amount of coverage, if any, that Safeco must
provide under the contract it executed with the Ohayons—an issue itself dependent
on the enforceability and application of the policy's stacking and setoff provisions.
These are issues sounding in contract law, and *Csulik* did not displace this court's
traditional contract choice-of-law principles.  See *Csulik*, 88 Ohio St.3d at 20-21,
723 N.E.2d at 93 (Douglas, J., concurring separately in judgment).  For these
reasons, the Ohayons' reliance on *Csulik* is misplaced.

### B. *Kurent v. Farmers Ins. of Columbus*

{¶ 40} The Ohayons also contend in their brief that in *Kurent,* 62 Ohio St.3d
242, 581 N.E.2d 533, "this Court established the basic principle, using a tort
conflict-of-law analysis, that there is a strong presumption in favor of applying the
law of the state where the injury occurred in determining uninsured/underinsured
motorist claims."  Though the Ohayons are correct that this court applied a tort

choice-of-law analysis in *Kurent*, we did so for reasons not applicable to the case at bar. Accord *Miller,* 87 F.3d 822 (distinguishing *Kurent*).

{¶ 41} In *Kurent*, a Michigan driver injured Ohio residents in Michigan. At the time, Michigan law denied noneconomic damages to plaintiffs unless such damages surpassed a certain threshold. The Ohio plaintiffs, who could not meet that threshold, sued their insurer in Ohio for uninsured motorist benefits, contending that Ohio law should control the determination of coverage. This court held:

"[W]hen an Ohio resident is injured in an automobile accident in a no-fault insurance state, by a resident of that state who is insured under that state's no-fault insurance laws, the Ohio resident's legal right to recover from the tortfeasor-motorist must be determined with reference to the no-fault state's laws. Where the no-fault state does not recognize a claim against the tortfeasor-motorist, the Ohio insured is not entitled to collect uninsured motorist benefits from his own insurer." *Id.* at syllabus.

{¶ 42} The Ohayons misinterpret *Kurent*'s holding as a statement that a tort choice-of-law analysis will always control UM and UIM claims. But the Ohayons overlook the fact that in *Kurent*, this court applied Michigan tort law *to the underlying accident*, explicitly recognized that "[t]he Kurents' claim for uninsured motorist coverage *is determined by their contractual relationship with Farmers*," and interpreted the terms of that contract "*[a]ccording to Ohio law*." (Emphasis added.) *Id.* at 246 and 245, 581 N.E.2d at 536. As the Sixth Circuit explained in *Miller,* the substantive tort question of whether the insured was "legally entitled to recover" benefits *at all* from the tortfeasor was the central issue in *Kurent*—a question that Michigan's no-fault laws answered in the negative. *Id.,* 87 F.3d at 825. Accord *Hooker v. Nationwide Mut. Ins. Co.* (June 19, 1997), Cuyahoga App. No. 71472, unreported, 1997 WL 337623. Here, the substantive tort question regarding the damages Jonathon is entitled to recover from the tortfeasor is not

before us. Instead, the Ohayons seek a declaration regarding the stacking and setoff provisions of their insurance agreement with Safeco—contract issues to which a contract choice-of-law analysis applies.

### C. An Alleged Choice-of-Law Provision

{¶ 43} Finally, the Ohayons contend that resort to Section 188 is unnecessary because the Safeco policy already contains a choice-of-law provision. To support this contention, the Ohayons point to the following policy language:

"OUT OF STATE COVERAGE

"If an auto accident to which this policy applies occurs in any state or province other than the one in which **your covered auto** is principally garaged, we will interpret your policy for that accident as follows:

"A. If the state or province has:

"1. A financial responsibility or similar law specifying limits of liability for **bodily injury** or **property damage** higher than the limit shown in the Declarations, your policy will provide the higher specified limit.

"2. A compulsory insurance or similar law requiring a nonresident to maintain insurance whenever the nonresident uses a vehicle in that state or province, your policy will provide at least the required minimum amounts and types of coverage." (Boldface *sic.*)

{¶ 44} This provision of the Safeco policy assures the policyholder that he or she may drive an insured vehicle into states that may require higher levels of *liability* insurance without violating those states' financial responsibility laws. It appears in a section of the Safeco policy titled "PART A—LIABILITY COVERAGE." Without this provision, an insured would be required to check the financial responsibility statutes of every jurisdiction into which he or she happened to drive in order to ensure that his or her policy included sufficient liability insurance to comply with each jurisdiction's laws.

**{¶ 45}** This provision, however, does not represent an express choice of law to be applied by courts in an action for UIM benefits under those independent provisions of the Safeco policy that appear in Part C. We do not invoke Restatement Section 187 to apply the law of the state chosen by the parties unless we are satisfied that the parties have actually made an express choice of law regarding the issue before the court. See Restatement at 561-562, Section 187, Comment *a* ("the rule of this Section is inapplicable unless it can be established that the parties have chosen the state of the applicable law. It does not suffice to demonstrate that the parties, if they had thought about the matter, would have wished to have the law of a particular state applied"). We do not agree with the Ohayons that the policy's provision for minimum out-of-state liability coverage dispenses with the need for a choice-of-law analysis regarding UIM coverage.

## VIII. Conclusion

**{¶ 46}** Our holding today does not determine the respective rights and liabilities of the parties in this case. Rather, we decide only that the trial court must employ Ohio law to make this determination. And as the court of appeals noted, in order for the trial court to resolve this case, it must also determine *which version* of R.C. 3937.18 (and related authority from this court) would apply to these facts. The parties have not briefed this issue here, and we express no opinion as to its resolution.[1]

---

1. The author of the dissent states, "Having determined that this case presents issues in contract, and since appellants concede that 'under contract law analysis, Ohio law prevails,' our inquiry should end here. The only remaining issue is whether Ohio law in effect at the time of contracting upheld or prohibited setoff and antistacking provisions in a UM/UIM policy, * * * and this issue should be remanded to the trial court for determination."

This is precisely the disposition adopted by the majority herein. By *affirming* the court of appeals' judgment, which reversed the trial court's decision granting summary judgment in favor of Safeco, we likewise adopt the court of appeals' disposition remanding the cause to the trial court for further proceedings. As noted *supra,* these proceedings will address the very issue correctly identified by the dissent as "[t]he only remaining issue"—*the application of Ohio law* to the stacking and setoff questions contained in the Ohayons' declaratory judgment action. Given that the dissent agrees that "our inquiry should end" precisely where the majority's does, and given that the dissent

{¶ 47} For the foregoing reasons, the judgment of the court of appeals is affirmed.

*Judgment affirmed.*

MOYER, C.J., PFEIFER and LUNDBERG STRATTON, JJ., concur.

DOUGLAS, RESNICK and F.E. SWEENEY, JJ., dissent.

_____

**ALICE ROBIE RESNICK, J., dissenting.**

{¶ 48} Plaintiff-appellant Jonathon Ohayon is the son of plaintiffs-appellants Jacob and Brenda Ohayon. On August 6, 1996, Jonathon, a minor at the time, was seriously injured when he was struck by an underinsured motorist while standing on a sidewalk at a shopping center in Sharon, Pennsylvania. It is undisputed that Jonathon's claim against the tortfeasor, Mary Welch, an Ohio resident, was settled for $100,000, which was the full per-person liability limits of Welch's insurance coverage.

{¶ 49} At the time of the accident, the Ohayons were insured under an Ohio Personal Automobile Policy issued by defendant-appellee, Safeco Insurance Company of Illinois ("Safeco"). The policy covered three vehicles and provided

_____

also agrees that the appellants have conceded that Ohio law would apply "under contract law analysis," the dissent's criticism of the majority's analysis as "myopic and mechanical" is puzzling.

Equally puzzling is the fact that, after deciding that "our inquiry should end" with a determination that the lower court should apply *Ohio* law on remand, the dissent then embarks on a lengthy analysis of what it concedes is a rare exception to the contract choice-of-law analysis in the Restatement of the Law 2d, Conflict of Laws. At the conclusion of this analysis, the dissent declares that, in fact, *Pennsylvania* law should apply. This conclusion directly contradicts the dissent's prior statement that "our inquiry should end" (as it already does) with the appellants' concession that *Ohio* law prevails.

The dissent also decides that the majority's stated reasons for rejecting the Ohayons' reliance on *Csulik*, 88 Ohio St.3d 17, 723 N.E.2d 90, "make no sense other than to artificially limit its holding." This is a flawed contention, given that *both* the majority and the dissent find the Ohayons' reliance on *Csulik* "misplaced" on the *very same basis*—that the contractual language at issue here, unlike the contractual language at issue in *Csulik*, is simply not ambiguous. Compare the majority's statement, "this provision differs on its face from the one addressed in *Csulik* and is not ambiguous" with the dissent's statement, "the Safeco policy in this case contains no such ambiguity."

the Ohayon family uninsured/underinsured motorist ("UM/UIM") coverage in the amount of $100,000 per person and $300,000 per occurrence. Appellants applied for UIM coverage, but Safeco denied their claims on the basis of the policy's setoff and antistacking provisions.

{¶ 50} There are three issues that ultimately need to be resolved in this case: (1) whether a tort or a contract choice-of-law analysis is to be followed in determining choice-of-law questions involving coverage under a UM/UIM insurance policy; (2) whether the selected choice-of-law analysis favors the application of Ohio or Pennsylvania substantive law; and (3) whether the law of the chosen state enforces setoff and antistacking clauses in a UM/UIM policy.

{¶ 51} The trial court addressed all three issues and held that, under a tort choice-of-law analysis, Pennsylvania law applied to invalidate the setoff and antistacking clauses in the Safeco policy. The court of appeals addressed only the first two issues, holding that, under a contract choice-of-law analysis, Ohio law applies to determine whether the setoff and antistacking provisions are enforceable. As to the third issue, the court of appeals remanded the cause to the trial court for a determination of whether, at the time of contracting, Ohio law treated these provisions as valid.

{¶ 52} On appeal to this court, however, appellants identify "[t]he essential issue in this action [as] whether the governing law is to be determined by tort conflict-of-law analysis, or by contract conflict-of-law analysis," while conceding that "under contract law analysis, Ohio law prevails." Thus, only the first issue is properly before this court.

{¶ 53} Accordingly, the court should characterize or classify the conflicts question in this case, and no more. In order to determine which choice-of-law rules apply in this case, we need only to assign the present factual situation to its appropriate legal category and the body of law that governs it. 1 Restatement of the Law 2d, Conflict of Laws (1971) 18, Section 7, Comment *b*. In other words,

the only issue before this court is "whether the problem presented to [the trial court] for solution relates to torts, contracts, property, or some other field." 16 American Jurisprudence 2d (1998) 12, Conflict of Laws, Section 3.

{¶ 54} This issue can be, and should be, resolved quite simply. Since a contract of insurance is just that, a contract, this court did not hesitate in applying a contract choice-of-law analysis to a question involving liability insurance coverage in *Nationwide Mut. Ins. Co. v. Ferrin* (1986), 21 Ohio St.3d 43, 21 OBR 328, 487 N.E.2d 568. This court has not yet specifically applied a contract choice-of-law analysis to a coverage question arising under a UM/UIM provision in an automobile insurance policy. However, this should also be accomplished with little difficulty, since "[t]he right to recover under an uninsured motorist insurance policy is on the contract, not in tort." *Motorists Mut. Ins. Co. v. Tomanski* (1971), 27 Ohio St.2d 222, 223, 56 O.O.2d 133, 134, 271 N.E.2d 924, 925. See, also, *Landis v. Grange Mut. Ins. Co.* (1998), 82 Ohio St.3d 339, 341, 695 N.E.2d 1140, 1141; *Kraly v. Vannewkirk* (1994), 69 Ohio St.3d 627, 632, 635 N.E.2d 323, 327; *Miller v. Progressive Cas. Ins. Co.* (1994), 69 Ohio St.3d 619, 624, 635 N.E.2d 317, 321. Thus, a contract choice-of-law analysis applies to determine which state's law will govern an issue of insurance coverage.

{¶ 55} Appellants' reliance on *Kurent v. Farmers Ins. of Columbus, Inc.* (1991), 62 Ohio St.3d 242, 581 N.E.2d 533, and *Mayse v. Watson* (Sept. 27, 1985), Erie App. No. E-85-8, unreported, 1985 WL 7613, is misplaced. In both cases, an Ohio insured was injured in an automobile accident that occurred in a state with no-fault insurance laws. Both courts employed a tort choice-of-law analysis to determine which state's law would apply to the underlying issue of whether the insured has a right to recover noneconomic damages. In so doing, both courts characterized this issue as sounding in tort because it involves the insured's right to recover *against the tortfeasor*. Thus, contrary to appellants' assertions, *Kurent* and *Mayse* do not stand for the proposition that tort principles govern the respective

rights and liabilities of the parties to a UM/UIM claim. Instead, they stand for the proposition that tort principles govern the respective rights and liabilities of the parties *to the accident*.

{¶ 56} In contrast, the underlying issues in this case—whether setoff and antistacking provisions in a UM/UIM policy are valid and enforceable—have nothing to do with the insured's right to recover against the tortfeasor. Instead, these issues relate solely to the respective rights and liabilities of the parties *to the insurance contract*. Thus, a contract choice-of-law analysis applies.

{¶ 57} Appellants' alternative reliance on *Csulik v. Nationwide Ins. Co.* (2000), 88 Ohio St.3d 17, 723 N.E.2d 90, is also misplaced. In *Csulik*, we found that the substantive law of Pennsylvania, where the accident occurred, rather than the law of Ohio, where the accident victims' insurance contract was executed, applied to determine the validity of a UM/UIM setoff provision. In so doing, however, we declined to "employ a choice-of-law analysis to determine whether Pennsylvania or Ohio law applies in this case." *Id.* at 20, 723 N.E.2d at 92. Instead, we employed the law governing ambiguous contract language to make this determination because several provisions in the Nationwide policy had actually specified that the laws of the accident state will govern the time limit for filing a legal action to recover UM/UIM benefits.

{¶ 58} Despite appellants' assertions to the contrary, the Safeco policy in this case contains no such ambiguity. Nothing in the Safeco policy suggests that any issue of UM/UIM coverage is to be determined under the substantive law of the accident state. Thus, unlike the parties in *Csulik*, the parties in this case are bound not by the law for construing ambiguous policy language but by those contract choice-of-law principles that apply in the absence of a choice-of-law provision.

{¶ 59} Having determined that this case presents issues in contract, and since appellants concede that "under contract law analysis, Ohio law prevails," our

inquiry should end here. The only remaining issue is whether Ohio law in effect at the time of contracting upheld or prohibited setoff and antistacking provisions in a UM/UIM policy, *Ross v. Farmers Ins. Group of Cos.* (1998), 82 Ohio St.3d 281, 695 N.E.2d 732, and this issue should be remanded to the trial court for determination.

{¶ 60} Nevertheless, the majority has chosen to go beyond the process of characterization to determine whether the Restatement's contract choice-of-law principles actually favor the application of Ohio law over that of Pennsylvania in the present factual situation. In so doing, the majority relies exclusively on the factors listed in Restatement of Conflicts Section 188(2). Thus, the majority concludes that Ohio law should apply to determine the underlying issues in this case because "[t]he insurance contract was executed and delivered in Ohio by Ohio residents and an Ohio-licensed insurance agent [and] insured vehicles principally garaged in Ohio."

{¶ 61} The majority's myopic and mechanical approach fails to consider other relevant contacts and state interests that, given their appropriate weight, favor the application of Pennsylvania law in this case. For these and the following reasons, and because the majority has chosen to vitiate rather than distinguish our decision in *Csulik*, I must respectfully dissent.[2]

---

2. In addressing appellants' alternative argument, the majority appears more concerned with devaluing our decision in *Csulik* than with legitimately distinguishing it from the matter before us. The majority notes, "[a]s a threshold matter," that "only three justices of this court joined the lead opinion in *Csulik*." However, as relevant here, the viability of our decision in *Csulik* is not diminished by the fact that one of the four justices comprising the majority concurred "only on a very limited basis." *Id.*, 88 Ohio St.3d at 20, 723 N.E.2d at 93 (Douglas, J., concurring). Justice Douglas's obvious concern in *Csulik* was that certain portions of the lead opinion may have given the impression that the Nationwide policy was ambiguous merely because it failed to include a particular choice-of-law clause. However, all four members of the majority in *Csulik* agreed that the policy was in fact ambiguous with respect to choice of law and, therefore, should be construed most strongly against the insurer. Thus, *Csulik* stands solidly for the proposition that when an insurance policy is ambiguous as to choice of law, as opposed to merely lacking a choice-of-law directive, the insurer will be bound by the rules for construing ambiguous policy language rather

**{¶ 62}** In determining choice-of-law questions involving contracts, this court has abandoned the outmoded traditional *lex loci* rules in favor of the more factor-driven "significant relationship" approach set forth at Sections 187 and 188 of the Restatement of Conflicts. *Ferrin,* 21 Ohio St.3d 43, 21 OBR 328, 487 N.E.2d 568; *Gries Sports Ent., Inc. v. Modell* (1984), 15 Ohio St.3d 284, 15 OBR 417, 473 N.E.2d 807; *Schulke Radio Prod., Ltd. v. Midwestern Broadcasting Co.* (1983), 6 Ohio St.3d 436, 6 OBR 480, 453 N.E.2d 683.

**{¶ 63}** Section 188 provides:

"(1) The rights and duties of the parties with respect to an issue in contract are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties under the principles stated in § 6.

"(2) In the absence of an effective choice of law by the parties (see § 187), the contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:

"(a) the place of contracting,

"(b) the place of negotiation of the contract,

"(c) the place of performance,

---

than by those choice-of-law principles that govern in the absence of an effective choice-of-law provision. Simply put, an insurer may not escape its own contractual ambiguity by resorting to choice-of-law rules.

The majority's remaining stated reasons for rejecting appellants' reliance on *Csulik* make no sense other than to artificially limit its holding. As in this case, the plaintiffs in *Csulik* brought their declaratory judgment action after they had been paid the limits of the tortfeasor's insurance. Thus, as here, the Csuliks' ability to prove the elements of their claim and recover damages against the tortfeasor was not at issue. Instead, just as in this case, the issue in the Csuliks' declaratory judgment action was the amount of coverage, if any, that the insurer must provide under the contract it executed with the insureds. Moreover, it can hardly be said that "*Csulik* did not displace this court's traditional contract choice-of-law principles," considering that it substituted the rules for resolving contractual ambiguity for those principles. Perhaps what the majority means is that *Csulik* did not displace choice-of-law principles beyond the context of an ambiguous insurance contract. But in any event, it is inconceivable that the majority would actually find *Csulik* to be distinguishable from this case on the basis that the very circumstances presented in *Csulik* are now repeated in this case.

"(d) the location of the subject matter of the contract, and

"(e) the domicile, residence, nationality, place of incorporation and place of business of the parties.

"These contacts are to be evaluated according to their relative importance with respect to the particular issue.

"(3) If the place of negotiating the contract and the place of performance are in the same state, the local law of this state will usually be applied, except as otherwise provided in §§ 189-199 and 203." *Id.* at 575.

**{¶ 64}** In many, and perhaps even in a majority of cases involving contracts, the evaluating court would be justified in relying exclusively on the contacts listed in Section 188(2) to choose the applicable rule of law. Oftentimes, the presence of one or more of these contacts will reveal the state with the most significant relationship to the transaction and the parties. In these cases, it is unnecessary to give independent significance to the general principles that underlie all fields of choice-of-law rules because those principles are already given expression through the relevant contacts listed in Section 188(2).

**{¶ 65}** But this is not true in all cases, and Section 188(2) was never intended to be the exclusive determinant in all cases involving contracts. The drafters of the Restatement of Conflicts recognized that "[c]ontracts is one of the most complex and most confused areas of choice of law," *id.* at 557, Contracts, Introductory Note 1, and that "the difficulties and complexities involved have as yet prevented the courts from formulating a precise rule, or series of rules, which provide a satisfactory accommodation of the underlying factors in all of the situations which may arise." *Id.* at 13, Section 6, Comment *c.* Hence, the contacts listed in Section 188(2) are intended to identify only those "states which are *most likely* to be interested" in deciding a particular issue of contracts. (Emphasis added.) *Id.* at 579, Section 188, Comment *e.*

**{¶ 66}** As the majority correctly observes, "the Restatement's contractual choice-of-law rules seek to protect the justified expectations of the contracting parties." This is because "[p]rotection of the justified expectations of the parties is the basic policy underlying the field of contracts." *Id.* at 577, Section 188, Comment *b*. But there are some relatively rare cases in which a local invalidating rule applies *despite the expectations of the contracting parties*. In these cases, it becomes necessary for the evaluating court to look beyond Section 188(2) and consider other relevant contacts and state interests. Otherwise, Section 188(2) would possess a false economy, for its continued application in these cases would result in subordinating important substantive interests to an unrealistic notion of "justified expectations."

**{¶ 67}** The situation that is now before us is a prime example of this kind of case. As explained in Comment *b* to Section 188:

"Protection of the justified expectations of the parties is a factor which varies somewhat in importance from issue to issue. * * * Parties entering a contract will expect at the very least, *subject perhaps to rare exceptions*, that the provisions of the contract will be binding upon them. Their expectations should not be disappointed by application of the local rule of a state which would strike down the contract or a provision thereof *unless the value of protecting the expectations of the parties is substantially outweighed in the particular case by the interest of the state with the invalidating rule in having this rule applied*. The extent of the interest of a state in having its rule applied should be determined in the light of the purpose sought to be achieved by the rule and by the relation of the transaction and the parties to that state (see Comment *c*)." (Emphasis added.) *Id.* at 577.

**{¶ 68}** Comment *c* explains:

"Whether an invalidating rule should be applied will depend, among other things, upon whether the interest of the state in having its rule applied to strike down the contract outweighs in the particular case the value of protecting the

justified expectations of the parties and upon whether some other state has a greater interest in the application of its own rule." *Id*. at 578.

{¶ 69} Thus, even if the place of negotiation and the place of performance are in the same state, the local law of this state will not be applied "*when the principles stated in § 6 require application of some other law*. As stated in Comment *c*, the extent of a state's interest in having its contract rule applied will depend upon the purpose sought to be achieved by that rule." (Emphasis added.) *Id*. at 583, Section 188, Comment *f*.

{¶ 70} In addition, Section 205, Comment *c* states:

"The situation is essentially the same in those *relatively rare situations* which involve the applicability of a local law rule which requires that the contract give rise to certain rights and duties or which provides that the parties may not limit the extent of their obligations by a certain provision. Application of such a rule may defeat the expectations of the parties. On the other hand, the rule is likely to represent a strongly-felt policy which the forum would be hesitant to override if the state with the rule involved was the state with the dominant interest in the issue to be decided." (Emphasis added.) *Id*. at 662.

{¶ 71} This view also carries over to Section 193, which provides:

"The validity of a contract of fire, surety or casualty insurance and the rights created thereby are determined by the local law of the state which the parties understood was to be the principal location of the insured risk during the term of the policy, unless with respect to the particular issue, some other state has a more significant relationship *under the principles stated in § 6 to the transaction and the parties, in which event the local law of the other state will be applied*." (Emphasis added.)

{¶ 72} In quoting Section 193, the majority carefully omits the foregoing italicized language, but this language reveals that the factors upon which the

majority relies will not necessarily determine every choice-of-law issue involving insurance contracts.  Indeed, Comment *c* to Section 193 provides:

"Whether there is such another state should be determined in the light of the choice-of-law principles stated in § 6.  For a general discussion of the application of these principles to the contracts area and of the principle favoring application of a law that would sustain the validity of the contract, see § 188, Comments *b-d. What is said in those Comments is applicable here*."  (Emphasis added.)  *Id*. at 612.

{¶ 73} More important, it is questionable whether the principal location of the insured risk under Section 193, or the location of the subject matter of the contract in Section 188(2)(d), enjoys any determinative significance in the case of an ambulatory insurance policy.  For the most part, these factors are important where the insurance covers a static physical thing, an immovable object, or a localized risk.  See Section 188, at 580-581, Comment *e*; Section 193, at 611, Comment *b*.  However, in most cases " '[i]nsurance companies * * * do not confine their contractual activities and obligations within state boundaries.  They sell to customers who are promised protection in States far away from the place where the contract is made.' "  *Clay v. Sun Ins. Office, Ltd.* (1964), 377 U.S. 179, 182, 84 S.Ct. 1197, 1199, 12 L.Ed.2d 229, 232, quoting *Clay v. Sun Ins. Office, Ltd.* (1960), 363 U.S. 207, 221, 80 S.Ct. 1222, 1230, 4 L.Ed.2d 1170, 1181 (Black, J., dissenting).  Thus, an insurance contract issued and delivered in Massachusetts, for example, can be held subject to Louisiana's "legitimate interest in safeguarding the rights of persons injured there."  *Watson v. Employers Liab. Assur. Corp., Ltd.* (1954), 348 U.S. 66, 73, 75 S.Ct. 166, 170, 99 L.Ed. 74, 82.  As the high court explained:

"Some contracts made locally, affecting nothing but local affairs, may well justify a denial to other states of power to alter those contracts.  But, as this case illustrates, a vast part of the business affairs of this Nation does not present such simple local situations.  Although this insurance contract was issued in

Massachusetts, it was to protect * * * against damages on account of personal injuries that might be suffered * * * anywhere in the United States." *Id.* at 71, 75 S.Ct. at 169, 99 L.Ed. at 81.

{¶ 74} These principles apply with even greater force in cases involving policies for automobile insurance. Interstate travel by automobile is simply too foreseeable and too common a phenomenon to be ignored. Moreover, as evidenced by the extensive regulation in this area, an automobile insurance contract is for the benefit of the public as well as for the benefit of the named or additional insured. Thus, when the issue presented involves the validity or enforceability of a provision that purports to limit coverage, the interest of the state where damage occurred may, along with other factors, play a more significant role in choice of law than the parties' presumed expectations or where the vehicle is principally garaged.

{¶ 75} This is especially true in cases involving exclusions or limitations on UM/UIM coverage, as this kind of coverage is not only ambulatory in nature, but portable as well. As explained by the Supreme Court of Connecticut:

" '[Uninsured motorist] coverage is portable: The insured and family members * * * are insured no matter where they are injured. They are insured when injured in an owned vehicle named in the policy, in an owned vehicle not named in the policy, in an unowned vehicle, on a motorcycle, on a bicycle, whether afoot or on horseback or even on a pogo stick'; *Bradley v. Mid-Century Ins. Co.*, 409 Mich. 1, 24, 38, 294 N.W.2d 141 [145, 152] (1980); or in a 'rocking chair on [one's] front porch.' *Motorists Mutual Ins. Co. v. Bittler*, 14 Ohio Misc. 23, 33 [43 O.O.2d 64, 69], 235 N.E.2d 745 [751] (1968)." *Harvey v. Travelers Indemn. Co.* (1982), 188 Conn. 245, 250, 449 A.2d 157, 160.

{¶ 76} Or, for that matter, while standing on a sidewalk at a shopping center in Sharon, Pennsylvania.

{¶ 77} Accordingly, courts have relied upon factors not listed in Sections 188(2) and 193 in choosing the state whose local substantive law should determine

the validity or enforceability of provisions that seek to limit or exclude liability or UM/UIM coverage in an automobile insurance policy, including provisions that prohibit stacking.

{¶ 78} In *Hime v. State Farm Fire & Cas. Co.* (Minn.1979), 284 N.W.2d 829, the Minnesota Supreme Court was asked to determine whether Florida or Minnesota law should govern the enforceability of a household immunity clause in an automobile liability policy. The clause was valid in Florida but unenforceable in Minnesota. The contract was issued in Florida to a Florida resident on a vehicle principally garaged in Florida, and the court presumed that the insurance premiums were paid in Florida. Nevertheless, the court concluded that "Minnesota law should govern resolution of this controversy." *Id.*, 284 N.W.2d at 834.

{¶ 79} In reaching its conclusion, the court explained:

"[T]he unplanned nature of automobile accidents lessens the importance of predictability of results in automobile insurance cases. Nevertheless, we note that the insured's protection has no geographical boundaries, at least not under the policy before us, and it is foreseeable that the insured may meet his misfortune out of the state of issuance. It was neither unusual nor unpredictable that the insured in this case, a former Minnesota resident, returned to visit his former home and that his vehicle was involved in an accident there. * * * The transaction was not planned to have predictable results, and the insurer is not now justified in expecting Florida law to govern absolutely in light of the extra-territorial effect and unique nature of the automobile insurance contract." *Id.*, 284 N.W.2d at 833.

{¶ 80} The court also recognized that "[p]roviding recovery to those injured and treated within our borders is a legitimate state interest," and that the application of Florida law to deny recovery in this case "offends our idea of fairness and defies our concern for the welfare of visitors to this state." *Id.*, 284 N.W.2d at 833-834. At the same time, the court noted that the sanctity of a contractual relationship between insured and insurer "is already diminished by the relative absence of free

30

negotiation, perhaps approaching the nature of a contract of adhesion." *Id*. at 834. See, also, Restatement Section 187, at 562, Comment *b* ("Common examples [of adhesion contracts] are tickets of various kinds and insurance policies").

{¶ 81} In *Abramson v. Aetna Cas. & Sur. Co.* (C.A.9, 1996), 76 F.3d 304, the Ninth Circuit Court of Appeals was asked to determine whether New Jersey or Hawaii law should govern the validity and enforceability of an antistacking provision in a UIM policy. The provision was apparently valid in New Jersey but unenforceable in Hawaii. The insurance contract was executed in New Jersey and insured a New Jersey resident, but the insured was killed by an underinsured motorist while bicycling in Hawaii. The court concluded that "the district court correctly applied Hawaii law [and] that under such law anti-stacking provisions are invalid as to persons injured on Hawaii streets and highways, regardless of whether the insured owns and insures a vehicle licensed in Hawaii." *Id.* at 306. In so doing, the Ninth Circuit agreed with the district court:

"New Jersey's interests in the insurance contract did not control the choice-of-law analysis because of the lack of any negotiation over the terms of the contract and [because of] the parties' expectations that the contract would cover the insured as he travelled throughout the United States and Canada." *Id*. at 305.

{¶ 82} In *Natl. Union Fire Ins. Co. v. Watts* (C.A.6, 1992), 963 F.2d 148, the Sixth Circuit Court of Appeals was asked to determine whether, under Ohio choice-of-law rules, the district court correctly held that Florida law, rather than Indiana or Texas law, governed the insured's right to recover UM benefits for injuries resulting from being forced off a Florida road by an unidentified vehicle, without physical contact. Indiana and Texas law would have denied coverage in this situation, while Florida law favored coverage. The insurance contract was issued through an Indiana broker to an Indiana corporation. At the time of the accident, the insured, a truck driver, was transporting property pursuant to a hauling contact with the Indiana corporation. The insured was a resident of Texas at the

time of contracting with the Indiana corporation, a resident of Florida at the time of the accident, and a resident of Ohio at the time suit was filed.

{¶ 83} The majority cites this case for the proposition that "Ohio's choice-of-law rules derive from *Gries, Ferrin*, and Section 188," citing *Watts*, 963 F.2d at 150. However, on the very next page of its opinion, the court in *Watts* specifically rejected the insurer's argument that Ohio's contract choice-of-law analysis is limited to the factors listed in Restatement of Conflicts Section 188, and found that the district court properly considered the principles stated in Section 6 as well. *Id.* at 151. Accordingly, the court found that Florida, as the situs of the truck driver's accident with the unknown vehicle, had the most significant relationship to the insurance contract, reasoning as follows:

"In its detailed opinion, the district court concluded [that] the interest of Florida, to provide compensation for its residents injured by hit-and-run drivers, and the interest of the insured, to be compensated by the insurance policy, appear to provide the most significant relationship to the contract. Further, Florida's public policy interest in the outcome seems to outweigh the less substantive relationships of Texas and Indiana as places of business for the truck driver and corporation. In addition, the court noted in its opinion that though the insurance coverage extended to the corporation's agents and employees anywhere in the United States, the policy failed to provide that any particular state's law must be applied. The district court interpreted this omission to mean that the insurer intended its coverage to be governed by the state in which the claimant was using his vehicle. We find this is bolstered by the general Ohio choice of law rule that the law of the state where the contract will be performed should govern. *Gries* [*supra*], 15 Ohio St.3d at [286, 15 OBR at 419], 473 N.E.2d at 810, quoting *Schulke* [*supra*], 6 Ohio St.3d [at] 438 [6 OBR at 481], 453 N.E.2d [at 685]. Thus, we conclude that Ohio choice of law rules mandate that the law of Florida governs the instant dispute." *Id.*, 963 F.2d at 152.

{¶ 84} In other cases presenting choice-of-law questions involving insurance coverage, but where the interpretation or enforceability of a particular contractual provision between insurer and insured is not directly at issue, the courts have at least recognized the relevance of certain non-Section 188(2) contacts and accompanying state interests. See *Cox v. Nichols* (Ind.App.1998), 690 N.E.2d 750, 752 ("The contract examination reveals [that] * * * the plaintiffs are residents of Michigan [and that] the place where Allstate and the plaintiffs' relationship is centered is Michigan. However, the collision [in Indiana] is not insignificant, and the alleged tortfeasor, Nichols, is a resident of Indiana. The factors weigh in favor of employing Indiana law."); *First City Acceptance Corp. v. Gulf Ins. Co.* (1997), 245 A.D.2d 649, 650, 665 N.Y.S.2d 114, 115 (agreeing with the trial court that "New York law was the applicable law since First City not only instituted its action in New York but the accident occurred in New York," while rejecting First City's argument that Massachusetts should apply because it "purchased the policy in Massachusetts, the agent who sold the policy and First City maintain their principal places of business in that state, and the policy was also delivered there"); *Nationwide Mut. Ins. Co. v. Perlman* (1983), 187 N.J.Super. 499, 504, 455 A.2d 527, 529-530 (Although insurance policy was issued in New York, the court applied the law of New Jersey, where the accident occurred, to determine the question of interspousal immunity, reasoning in part that "since an automobile is by self-definition mobile, an insurer might reasonably expect that it will be taken to another state, especially a neighboring one, * * * that does not provide interspousal immunity"); *Fed. Ins. Co. v. Nationwide Mut. Ins. Co.* (W.D.Va.1978), 448 F.Supp. 723, 726 (law of Virginia, where accident occurred, chosen over law of Tennessee, where contract was made, in part because Virginia "has manifested a legitimate interest in safeguarding the rights of persons injured within her boundaries"); *Clough v. Liberty Mut. Ins. Co.* (E.D.Wis.1968), 282 F.Supp. 553, 554 (Wisconsin rather than Indiana law held applicable to household exclusion

clause, partially on the basis that while "Indiana might well desire that automobile insurance contracts entered into between its residents and insurance companies licensed to do business in that state will be honored, regardless of where an accident occurs[,] * * * Wisconsin is likewise interested in preserving its policy of providing compensation to the injured, irrespective of their residence").

{¶ 85} The purpose of the foregoing is not to establish a choice-of-law rule under which questions of insurance coverage are to be determined by the law of the state that affords the most coverage. Nor is it my intent to persuade anyone that any of the foregoing cases present situations that are precisely equivalent to the situation presented by the record in the present case. Instead, the foregoing analysis is meant only to illustrate that in cases involving the validity or enforceability of automobile insurance provisions that seek to exclude or limit coverage, the forum court must look to other contacts besides those listed in Section 188 of the Restatement. These other contacts include the place of injury, the place of medical treatment, the proximity of the insured's residence to the accident state, and the foreseeability of his or her presence there, while bearing in mind the adhesory, ambulatory, and portable nature of automobile insurance contracts and coverage. The court must also consider whether the interests of the state with the invalidating rule in having its rule applied outweigh the insurer's expectation that the contractual provision at issue will be binding upon the parties. Thus, the court must focus some of its attention on the purposes, policies, aims, and objectives that underlie the invalidating state's rule. Only then can a full determination be made as to which state "has the most significant relationship to the transaction and the parties under the principles stated in § 6." Restatement Section 188(1).

{¶ 86} In determining whether Ohio or Pennsylvania has the most significant relation in this case, the following facts are relevant. The Ohayons live in Akron, Ohio, and have family in Pittsburgh, Pennsylvania. Jacob Ohayon testified at deposition that he visits his Pittsburgh relatives "[t]hree [or] four times

a year, maybe five times a year." This court can take judicial notice that eastern Ohio, where Akron is located, borders western Pennsylvania, where both Pittsburgh and Sharon are located. On the day of the accident, Jonathon was in Pennsylvania for the purpose of meeting his relatives.

{¶ 87} Following the accident, Jonathon was taken to the Sharon Regional Hospital and from there taken by helicopter to Allegheny General Hospital in Pittsburgh. Jonathon remained at Allegheny General for over a month, where he underwent numerous surgical and other procedures to repair the significant damage to his right leg. Since then, Jonathon has received all of his medical care in Pennsylvania, requiring frequent trips to Pennsylvania, and within ten months of the accident had incurred in excess of $250,000 in medical bills.

{¶ 88} In "PART F—GENERAL PROVISIONS," the instant Safeco insurance policy provides that coverage will be afforded for accidents and losses that occur in:

"1. The United States of America, its territories or possessions;

"2. Puerto Rico; or

"3. Canada."

{¶ 89} Yet there is no specific or general provision in the policy or any of the amendatory endorsements that purports to define or identify the substantive law of Ohio as being determinative of any matter of coverage under "PART C— UNINSURED/UNDERINSURED MOTORISTS COVERAGE."

{¶ 90} In addition, Pennsylvania courts, as well as other courts applying Pennsylvania law, have recognized Pennsylvania's uncommonly strong interest in protecting innocent victims of uninsured or underinsured motorists from insurers who attempt to limit their recovery by setoff and antistacking provisions. Indeed, these cases provide that any attempt by the insurer to circumscribe the availability of coverage in derogation of Pennsylvania's statutory scheme will be considered void and contrary to public policy. In invalidating these kinds of provisions, the

courts invariably observe that Pennsylvania has a firm public policy to afford the maximum amount of protection to those innocent victims who suffer loss at the hands of irresponsible drivers.  See *New Jersey Mfrs. Ins. Co. v. MacVicar* (1998), 307 N.J.Super. 507, 513-515, 704 A.2d 1343, 1347; *N. River Ins. Co. v. Tabor* (C.A.3, 1991), 934 F.2d 461; *Erie Indemn. Co. v. McGaughey* (1991), 409 Pa.Super. 177, 597 A.2d 718; *Nationwide Mut. Ins. Co. v. Swisher* (E.D.Pa.1989), 731 F.Supp. 691; *State Farm Mut. Auto. Ins. Co. v. Williams* (1978), 481 Pa. 130, 392 A.2d 281; *Sands v. Granite Mut. Ins. Co.* (1974), 232 Pa.Super. 70, 80-82, 331 A.2d 711, 716-717; *Harleysville Mut. Cas. Co. v. Blumling* (1968), 429 Pa. 389, 241 A.2d 112.

**{¶ 91}** With these considerations in mind, it is readily apparent that Pennsylvania has the most significant relationship to the transaction and the parties in this case, and that Pennsylvania's strong interest in striking down setoff and antistacking provision in UM/UIM insurance policies substantially outweighs the value of protecting Safeco's expectations that these provisions, which were not negotiated for, would be binding upon the Ohayons.  Accordingly, under a contract choice-of-law analysis, Pennsylvania law should apply to determine the substantive issues in this particular case and that the provisions in the Safeco policy that provide for setoff and prohibit stacking are invalid and unenforceable under Pennsylvania law.

**{¶ 92}** Therefore, I dissent.

DOUGLAS and F.E. SWEENEY, JJ., concur in the foregoing dissenting opinion.

_____

*Nicholas Swyrydenko,* for appellants.

*James A.  Sennett* and *Adam E. Carr*, for appellee.

_____