**[This opinion has been published in *Ohio Official Reports* at 88 Ohio St.3d 17.]**

CSULIK, EXECUTOR, ET AL., APPELLANTS, *v*. NATIONWIDE MUTUAL INSURANCE
COMPANY, APPELLEE.

**[Cite as *Csulik v. Nationwide Mut. Ins. Co.*, 2000-Ohio-262.]**

*Motor vehicles—Insurance—Phrase "due by law" in policy regarding uninsured
and underinsured motorist coverage is ambiguous and susceptible of more
than one interpretation—Ambiguity in contract language must be
construed strictly against the insurer and liberally in favor of the insured.*

(No. 98-772—Submitted April 21, 1999 at the Hardin County and Ohio Northern
University Law School Session—Decided February 16, 2000.)

APPEAL from the Court of Appeals for Stark County, No. 1997CA00283.

———————————

**{¶ 1}** On July 20, 1995, three Ohio residents, Jerome F. Csulik, his seventeen-year-old daughter, Nicole, and her friend, Tiffany Lowden, also seventeen, were involved in an automobile accident on a Pennsylvania interstate. A drunken driver traveling the wrong way on the interstate struck the Csulik vehicle. Jerome Csulik was killed, and Nicole and Tiffany suffered serious injuries, incurring medical expenses in excess of $60,000 and $50,000, respectively.

**{¶ 2}** The tortfeasor, Dale Sorensen, a Pennsylvania resident, had liability insurance through Erie Insurance Company ("Erie") with limits of $100,000 per person and $300,000 per occurrence. Erie paid the limits of its policy — $100,000 to each of the injured parties. The Csulik family had uninsured ("UM") and underinsured ("UIM") motorist coverage of $300,000 per person, $500,000 per occurrence, through a policy with Nationwide Insurance Company ("Nationwide"). Nationwide has paid an undisputed sum of $200,000 to Jerome's widow, Eddine, as executor of his estate. Nationwide has made no payment to Nicole or Tiffany.

**{¶ 3}** On January 21, 1997, Eddine, as executor, Nicole, and Tiffany filed lawsuits seeking declaratory judgments and damages under the Nationwide policy. They urged the court to apply Pennsylvania law to their claims. Nationwide moved for summary judgment, requesting the court to declare that Ohio law applied to all issues pertaining to plaintiffs' rights under the policy. Nationwide requested a declaration that plaintiffs' UIM coverage was subject to setoff in the amount of the payments made by the tortfeasor, pursuant to Ohio law.

**{¶ 4}** The UM/UIM Coverage Agreement, as set forth in the policy, read:

"We will pay compensatory damages, including derivative claims, which are *due by law* to you or a relative from the owner or driver of an uninsured motor vehicle because of bodily injury suffered by you or a relative." (Emphasis added.)

**{¶ 5}** The above language provided UM/UIM coverage to Jerome and Nicole Csulik. The policy provided coverage to Tiffany pursuant to the following language in the Coverage Agreement:

"We will also pay compensatory damages, including derivative claims, which are *due by law* to other persons who: 1. Are not a named insured or an insured household member for similar coverage under another policy; and 2. Suffer bodily injury while occupying * * * your auto." (Emphasis added.)

**{¶ 6}** On July 22, 1997, the trial court ruled that Pennsylvania law governed the recovery of compensatory damages under the Nationwide policy. The trial judge pointed out that "[t]he insurance carrier could have indicated that the phrase 'due by law' was intended to expressly mean the home state of the insured," but that "[t]he carrier chose to not expressly set forth this requirement." The court held that "due by law" should be the law of the state where the accident occurred, noting that the policy stated that the applicable statute of limitations for bringing a UIM claim is that of the state where the accident occurred.

**{¶ 7}** On March 9, 1998, the court of appeals reversed the trial court's judgment and remanded the case. The cause is before this court upon the allowance of a discretionary appeal.

───────────────

*The Okey Law Firm, L.P.A.*, and *Mark D. Okey*, for appellants.

*Weston, Hurd, Fallon, Paisley & Howley, L.L.P., Timothy D. Johnson* and *Gregory E. O'Brien*, for appellee.

───────────────

**PFEIFER, J.**

**{¶ 8}** We hold that the phrase "due by law" in the Nationwide policy regarding UM/UIM coverage is ambiguous, susceptible of more than one interpretation, and that the ambiguity must be construed strictly against the insurer and liberally in favor of the insured.

**{¶ 9}** The phrase at issue in this case is:

"We will pay compensatory damages, including derivative claims, which are *due by law* to you or a relative from the owner or driver of an uninsured motor vehicle because of bodily injury suffered by you or a relative." (Emphasis added.) The Nationwide policy carried a virtually identical clause for passengers.

**{¶ 10}** We agree with the trial court that the contract fails to specifically set forth what "due by law" means, *i.e.*, whether Nationwide must pay what is due by the law of the state where the accident occurred or due by Ohio law.

**{¶ 11}** Nationwide could have explicitly set forth that "due by law" meant damages subject to the UM/UIM laws of the home state of the insured. In at least four other portions of the policy, Nationwide specifically sets forth which state's law applies.

**{¶ 12}** In Section 3(a) of the General Policy Conditions, the policy provides:

"[A]ny terms of the policy which may be in conflict with statutes *of the state in which the policy is issued* are hereby amended to conform." (Emphasis added.)

**{¶ 13}** Endorsement 2352, an Uninsured Motorists Coverage endorsement issued to Ohio insureds, contains an Arbitration clause that reads in pertinent part:

"5. When used, arbitration of uninsured motorists claims is binding on the insured and the company only if the award is within the limits of state financial responsibility laws *where your auto is principally garaged.*" (Emphasis added.)

**{¶ 14}** Section 9 of the General Policy Conditions explicitly sets forth the statute of limitations for uninsured motorist claims:

"Under the Uninsured Motorists Coverage, legal action against us must begin within the time limit allowed for bodily injury or death actions *in the state where the accident occurred.*" (Emphasis added.)

**{¶ 15}** Endorsement 2251A, an amendatory endorsement issued to Ohio insureds relating to statutes of limitations, reads:

"General Policy Condition 9 is replaced in its entirety to read:
" * * *

"Under the Uninsured Motorists coverage, any * * * legal action against us must begin within a certain time period. * * * [T]he proper papers for any other legal action against us must be filed, *within two years or the time limit allowed by law:*

"*a) for death actions if the claim involves the death of an insured; or*

"*b) for bodily injury actions if the claim involves injury to an insured but not death.*

"*The laws of the state in which the accident occurred* will determine these time limits." (Emphasis added.)

**{¶ 16}** Thus, Nationwide demonstrated in the same policy the ability to specifically set forth which state's law controlled certain policy provisions. Certainly, Nationwide could have clarified the "due by law" language.

**{¶ 17}** But as written, the "due by law" phrase is subject to more than one interpretation. The phrasing itself is imprecise. Also, given the treatment of underinsured motorist claims in the contract, the language can easily be interpreted as embracing the law of the accident state. Under the contract, one of the most elemental factors of the insured/insurer relationship vis-à-vis an uninsured motorist claim, the statute of limitations, is controlled by the law of the state where the accident occurred. That policy language takes the insured and insurer outside the state where the contract was executed.

**{¶ 18}** Thus, despite Nationwide's argument that the payment of uninsured claims is a contractual matter subject to the law of the state where the contract was entered into, its own contract sets forth a key jurisdictional element, *i.e.*, time limits, as being subject to the law of the state of the accident. That contract language sets the stage for the insured's claim against the insurer to be controlled by the law of the accident state. No contract language states otherwise. One could logically conclude that the law of the accident state also determines plaintiff's rights under the policy.

**{¶ 19}** This case is simply one of an ambiguous clause in a particular insurance contract. As this court has often held: "Where provisions of a contract of insurance are reasonably susceptible of more than one interpretation, they will be construed strictly against the insurer and liberally in favor of the insured." *King v. Nationwide Ins. Co.* (1988), 35 Ohio St.3d 208, 519 N.E.2d 1380, syllabus. That fundamental holding negates Nationwide's argument that this court should employ a choice-of-law analysis to determine whether Pennsylvania or Ohio law applies in this case. A choice-of-law analysis might be appropriate in regard to an ordinary contract, but this is an insurance contract. Insurance contracts are a special breed, and ambiguous clauses are resolved in favor of the insured.

**{¶ 20}** We accordingly reverse the judgment of the court of appeals and remand the cause to the trial court for a determination of plaintiffs' rights under the policy pursuant to Pennsylvania law.

*Judgment reversed*

*and cause remanded.*

RESNICK and F.E. SWEENEY, JJ., concur.

DOUGLAS, J., concurs separately in judgment.

MOYER, C.J., COOK and LUNDBERG STRATTON, JJ., dissent.

_____

**DOUGLAS, J., concurring.**

**{¶ 21}** I concur with the judgment of the majority but only on a very limited basis. Clearly the insurance policy involved herein is a contract between the parties. This being so, general contract principles should apply. That is, absent a choice-of-law clause in the contract, the law of the jurisdiction where the contract was entered into prevails. However, in this case, as systemically pointed out by the majority, the parties seemed to alter, by their contract, that general principle. Having done so, both parties are bound by the law of ambiguity and, accordingly, the result in this case *on these facts* is correct. Absent these special provisions, my vote would be different from that of the majority.

_____

**LUNDBERG STRATTON, J., dissenting.**

**{¶ 22}** I respectfully dissent. I do not agree that the phrase "due by law" is imprecise or ambiguous. The policy provision for UM/UIM coverage provides that the insurer "will pay compensatory damages * * * which are due by law to [an insured] from the owner or driver of any uninsured motor vehicle because of bodily injury suffered by [an insured]." In this context, the phrase merely means that the insurer will pay the insured for UM or UIM benefits in accordance with the law, *i.e.*, what is owed or payable to the insured for bodily injuries caused by the owner

6

or operator of an uninsured or underinsured motor vehicle; it means no more. The phrase at issue has nothing to do with issues of contract formation, place of contract situs, or choice of law.

{¶ 23} I fail to follow the majority's rationale that the phrase somehow relates to the law governing contract formation. Although the Nationwide policy designated that the time period in the state where the accident occurred will determine when the insured must file a claim for UM/UIM benefits under his or her own policy, the majority also stretches that provision to conclude that the insured's *contract* rights under the insurance policy are also determined by the law of the state where the accident occurred. The fact that the policy does not define or identify the substantive law of a particular state as being applicable does not render the phrase ambiguous, particularly when nothing in the phrase implies any relation to the law of contract formation.

{¶ 24} I agree with the court of appeals that the law of the state of Ohio applies. An insurance policy is a contract between the insurer and the insured. *Ohio Farmers Ins. Co. v. Cochran* (1922), 104 Ohio St. 427, 135 N.E. 537, paragraph one of the syllabus. In addition, Ohio has long recognized that a dispute between an insurer and an insured over UM/UIM coverage is an issue sounding in contract, not tort. *Landis v. Grange Mut. Ins. Co.* (1998), 82 Ohio St.3d 339, 341, 695 N.E.2d 1140, 1141 ("We conclude that [the insured's] UMI [*sic*, UIM] claim is a contract claim, while acknowledging that there would be no UMI [*sic*] claim absent tortious conduct."); *Ross v. Farmers Ins. Group of Cos.* (1998), 82 Ohio St.3d 281, 695 N.E.2d 732, at syllabus ("[S]tatutory law in effect at time of entering into contract for automobile liability insurance controls the rights and duties of the contracting parties."); *Miller v. Progressive Cas. Ins. Co.* (1994), 69 Ohio St.3d 619, 624, 635 N.E.2d 317, 321 ("We recognize that an action by an insured against an insurance carrier for payment of uninsured or underinsured motorist benefits is a cause of action sounding in contract."); *Kraly v. Vannewkirk* (1994), 69 Ohio St.3d 627,

632, 635 N.E.2d 323, 327 (" 'legal basis for recovery under the uninsured motorist coverage of an insurance policy is contract' "); *Kurent v. Farmers Ins. of Columbus, Inc.* (1991), 62 Ohio St.3d 242, 243, 581 N.E.2d 533, 535 ("The basis of Farmers' obligation to the Kurents lies in the insurance contract * * * ."); *Motorists Mut. Ins. Co. v. Tomanski* (1971), 27 Ohio St.2d 222, 223, 56 O.O.2d 133, 134, 271 N.E.2d 924, 925 ("The right to recover under an uninsured motorist insurance policy is on the contract, not in tort.").

{¶ 25} In Ohio, it is well settled that the law of the state where a contract is *made* governs the interpretation of the contract. *Nationwide Mut. Ins. Co. v. Ferrin* (1986), 21 Ohio St.3d 43, 44, 21 OBR 328, 329, 487 N.E.2d 568, 569. Applying a choice-of-law analysis to this insurance contract, it is clear that Ohio law applies. The insurance contract was made in Ohio. The insured vehicle was garaged in Ohio. The insureds are Ohio residents dealing with Ohio insurance agents.

{¶ 26} The majority refutes the choice-of-law analysis. Although it admits that such analysis "might be appropriate in regard to an ordinary contract," the majority distinguishes, without any legal basis, an insurance contract as a "special breed" of contract. Even if this "special breed" exists, why would it be excepted from a choice-of-law analysis? Construing a contract in favor of an insured should not require us to abandon long-standing and sound contract principles.

{¶ 27} The majority finds ambiguity where none exists. As a result of this illogical result, I believe questions of UM/UIM coverage for out-of-state accidents will now be routinely forced into litigation. An insured seeking UM/UIM coverage due to an accident that occurred in another state will now argue ambiguity if the policy uses the phrase "due by law," in order to recover benefits under the state having the laws most favorable to his or her recovery. Is the majority encouraging courts to abandon a choice-of-law analysis in favor of an application of the state's law that is most favorable to the insured?

**{¶ 28}** Because I would apply the principles of contract law to this insurance contract, I would affirm the judgment of the court of appeals and remand this cause to the trial court to apply Ohio law with respect to the issues of entitlement to set off payments and application of "per person" limits of coverage.

MOYER, C.J., and COOK, J., concur in the foregoing dissenting opinion.

_____