JORDAN et al., Appellants,

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY
et al.; Oak Casualty Insurance Company, Appellee.

[Cite as *Jordan v. State Farm Mut. Auto. Ins. Co.* (2001), 141 Ohio App.3d 670.]

Court of Appeals of Ohio,
Seventh District, Columbiana County.

No. 99–CO–4.

Decided Feb. 15, 2001.

*Aronson, Fineman & Davis, William J. Davis* and *Kellie S. Kontnier,* for appellants.

*Roth, Blair, Roberts, Strasfeld & Lodge Co., LPA,* and *Richard Blair,* for appellee Oak Casualty Insurance Company.

*Vogelgesan, Howes, Lindamood & Brunn, Richard S. Milligan* and *Heather E. Ewashinka,* for State Farm Mutual Insurance Company.

*Weston, Hurd, Fallon, Paisley & Howley, L.L.P.,* and *Timothy D. Johnson,* for Nationwide Mutual Insurance Company.

*Pfau, Pfau & Marando,* and *William E. Pfau III,* Youngstown, for Colonial Insurance Company.

*Kurt R. Weitendorf,* for Maryland Insurance Company.

---

WAITE, Judge.

This timely appeal arises from the decision of the Columbiana County Court of Common Pleas granting summary judgment to appellee, Oak Casualty Insurance Company. For the following reasons, we affirm the judgment of the trial court.

We note that this appeal arises from a case in which another plaintiff, the brother of appellant herein, appealed an identical issue to this court and which we decided in *Jordan v. State Farm Mut. Auto. Ins. Co.* (Mar. 23, 2000), Columbiana App. No. 98–CO–62, unreported, 2000 WL 311519 (Hereinafter, *"Jordan I"*).

The facts of this case are not in dispute. On October 25, 1994, Jesse R. Jordan ("decedent") died as a result of the injuries he sustained in an automobile accident with an uninsured motorist. The accident occurred in Columbiana County, Ohio. Appellant Dennis Jordan is the son of the decedent. His children are also parties in this matter; however, since their claims are derivative of those of their father, they will not be addressed individually herein. At all relevant times, appellant was a resident of West Virginia while the decedent was a resident of Ohio. Appellant was not the owner, driver, or occupant of the vehicle in which the decedent died.

On October 19, 1994, appellant's wife, Margaret Jordan, renewed an automobile insurance policy with appellee, policy No. WVA 175756, which included uninsured motorist ("UM") coverage and which was in full force and effect on the date of the accident in which the decedent died. It is not disputed that appellant was an insured under that contract. Subsequent to the accident, appellant claimed entitlement to compensation under the UM clause of the policy, stating that the decedent's death constituted a loss under the policy to both himself and his minor children.

Appellee filed a motion for summary judgment on December 1, 1998. In a judgment entry filed on December 22, 1998, the trial court sustained appellee's motion, incorporating the reasons stated in a prior judgment entry that granted summary judgment to the appellee insurance company in *Jordan I*. In that journal entry, the trial court stated that the dispute sounded in contract law and that the substantive law of West Virginia applied. The court found that under West Virginia law, a wrongful death beneficiary's UM claims are derivative in nature. Due to this, appellant's claim was not covered by the insurance policy.

Appellant filed his notice of appeal on January 14, 1999. His sole assignment of error alleges:

"The trial court prejudicially erred as a matter of law in applying the law of the state of West Virginia to this action where the automobile accident occurred in the state of Ohio, the decedent was an Ohio resident, and the issues presented herein arise out of a tort claim; therefore, the injured parties are entitled to underinsured motorists benefits for wrongful death damages in accordance with the law of the state of Ohio where the accident occurred."

■ Appellant argues that this matter sounds in tort and the analysis set forth in *Morgan v. Biro Mfg. Co.* (1984), 15 Ohio St.3d 339, 15 OBR 463, 474 N.E.2d 286, applies. In *Morgan*, the Ohio Supreme Court adopted the analysis of the Restatement of the Law 2d, Conflict of Laws (1971), which requires that when a choice-of-law question arises in a tort action, "a presumption is created that the law of the place of the injury controls unless another jurisdiction has a more

significant relationship to the lawsuit. To determine the state with the most significant relationship, a court must then proceed to consider * * * (1) the place of the injury; (2) the place where the conduct causing the injury occurred; (3) the domicile, residence, nationality, place of incorporation, and place of business of the parties; (4) the place where the relationship between the parties, if any, is located; and (5) any factors * * * which the court may deem relevant to the litigation." *Morgan v. Biro Mfg. Co.* at 342, 15 OBR at 465–466, 474 N.E.2d at 289.

Applying the above factors, appellant concludes that in addition to the presumption that Ohio law is controlling, Ohio has the most significant interest in the claim. Appellant states that the conduct causing the injury and the injury itself occurred in Ohio, appellant is a resident of West Virginia while appellee is a Florida corporation, and appellant had close ties with Ohio and frequently visited relatives in Columbiana County. Appellant also argues that Ohio's strong public policy must be considered in the *Morgan* analysis. This argument is based on the premise that Ohio law provides that a UM claim related to a wrongful death action is a separate action for which separate damages are to be recovered by the injured parties. Appellant contrasts this with West Virginia law, which provides that such a claim is derivative only, flowing from the injury to the decedent, not from direct injury to the claimant. Appellant argues that the greater protection afforded Ohio citizens injured as a result of a death of a relative caused by a tortfeasor should, as a matter of public policy, be extended to a citizen of West Virginia who is injured by the death of a relative caused by an Ohio tortfeasor.

To demonstrate and support the application of the *Morgan* analysis, appellant cites numerous cases, most notably, our decision in *Nationwide Ins. Co. v. Fryer* (1990), 62 Ohio App.3d 905, 577 N.E.2d 746. In *Fryer*, the claimant and her deceased husband resided in Columbiana County. The husband died in an accident in Pennsylvania involving a Pennsylvania tortfeasor. After exhausting the limits of the tortfeasor's insurance policy, the claimant pursued an underinsured motorists ("UIM") claim against Nationwide, her own carrier, which denied the claim. In a declaratory judgment action, the trial court held for the insurance company and found that Ohio contract law, which prohibited stacking, and not Pennsylvania tort law, which would have allowed the claim, applied. On appeal, we reversed the trial court's decision and found that Pennsylvania tort law applied. *Id.* at 909, 577 N.E.2d at 749. We stated that a contract of insurance was not intended to establish what type and to what extent damages should be recoverable. *Id.* at 908, 577 N.E.2d at 748–749. Rather, we held that principles of tort law are to determine damages. *Id.* at 909, 577 N.E.2d at 749.

Appellant concludes that based on the above, Ohio's substantive law should apply. Appellant argues that he should be entitled to recover damages for

wrongful death under *Sexton v. State Farm Mut. Auto. Ins. Co.* (1982) 69 Ohio St.2d 431, 23 O.O.3d 385, 433 N.E.2d 555, which was the controlling law at the time that appellant's insurance coverage was renewed. In *Sexton,* the court determined that the purpose of UM coverage is to protect individuals from losses that would go uncompensated because of the tortfeasor's lack of sufficient liability coverage. *Id.* at 436, 23 O.O.3d at 388, 433 N.E.2d at 559–560. Furthermore, *Sexton* held that certain family members of a decedent are presumed to have suffered damages under Ohio's wrongful death statute. Because of this presumption, they may maintain a wrongful death action against an uninsured tortfeasor. *Id.* at 435, 23 O.O.3d at 387–388, 433 N.E.2d at 559; R.C. Chapter 2125. See, also, *Moore v. State Auto. Mut. Ins. Co.* (2000), 88 Ohio St.3d 27, 723 N.E.2d 97, which recently underscored the continuing validity of the *Sexton* decision.

■ For the same reasons we stated in *Jordan I,* appellant's argument that Ohio's substantive law should apply here is not well taken. When reviewing a motion for summary judgment, an appellate court must review the judgment independently with no deference given to the trial court's decision. *Bell v. Horton* (1996), 113 Ohio App.3d 363, 365, 680 N.E.2d at 1273–1274. Summary judgment under Civ.R. 56 is proper only where:

" '(1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds could come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.' " *Welco Industries, Inc. v. Applied.Cos.* (1993), 67 Ohio St.3d 344, 346, 617 N.E.2d 1129, 1132, quoting *Temple v. Wean United, Inc.* (1977) 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 472, 364 N.E.2d 267, 273–274.

In the present matter, there is no dispute as to the material facts. Therefore, we must decide whether appellee is entitled to judgment based on these facts as a matter of law.

■ Appellant mistakenly argues that the issue surrounding his claim sounds in tort. Although appellant correctly recited our holding and analysis in *Fryer,* we have since stated that "[o]ur decision in *Fryer* has been overruled to the extent that subsequent case law has made clear that the legal basis for recovery under the uninsured motorist coverage of an insurance policy is contract and not tort." *Salem Community Hosp. v. State Farm Ins. Co.* (Feb. 23, 1999) Columbiana App. No. 97–CO–33, unreported, at 5, 1999 WL 126930, citing *Landis v. Grange Mut. Ins. Co.* (1998), 82 Ohio St.3d 339, 695 N.E.2d 1140. We stated further that "[a]lthough a tortious injury is the underlying basis for a UM/UIM claim, since the UM/UIM claim basically seeks to determine an insured's contrac-

tual rights against the insurer, the action itself sounds in contract rather than tort." *Salem Community Hosp. v. State Farm Ins. Co.*, at 5, citing *Wilson v. Nationwide Ins. Co.* (Nov. 20, 1997), Cuyahoga App. No. 71734, unreported., 1997 WL 723419 Having determined that a UM/UIM claim is contractual in nature, we determined that "[i]n deciding choice of law questions involving contracts for insurance the following factors should be taken into account: (1) the place of contracting; (2) the place of negotiations of the contract; (3) the place of performance; (4) the location of the subject matter of the contract; and (5) the domicile, residence, nationality, place of incorporation and place of business of the parties." *Salem Community Hosp. v. State Farm Ins. Co.*, at 5, citing *Nationwide Mut. Ins. Co. v. Ferrin* (1986), 21 Ohio St.3d 43, 44–45, 21 OBR 328, 329–330, 487 N.E.2d 568, 569–570.

In the present matter, nothing on the record supports that the parties entered into the contract anywhere but in West Virginia. In fact, the policy is titled "West Virginia Family Automobile Policy." The performance of the contract (proposed payment of UM benefits to appellant, a West Virginia resident) would be in West Virginia. See, *Salem Community Hosp., supra,* at 5. There is nothing on the record to suggest that the subject matter of the contract, the insured vehicle, was registered and garaged anywhere but in West Virginia. Rather, Part IV of the policy defines an "insured motor vehicle" as one registered in the state of West Virginia. In addition, appellant was at all times a resident of West Virginia while appellee is a licensed Florida corporation doing business in West Virginia. Therefore, West Virginia law governing contracts applies to this matter.

As we did in *Jordan I,* we must note the Ohio Supreme Court's recent decision in *Csulik v. Nationwide Mut. Ins. Co.* (2000), 88 Ohio St.3d 17, 723 N.E.2d 90. In that case, the court was faced with a choice-of-law question involving an insurance policy issued in Ohio and a Pennsylvania tortfeasor. The policy stated that it would pay compensatory damages which were "due by law" but did not specify whether it referred to Ohio law or the law of the state where the accident occurred. The court concluded that the policy language "due by law" was susceptible of more than one meaning and that the ambiguity must be resolved in favor of the insured. The court remanded the matter for application of Pennsylvania law, which favored the insured.

*Csulik* is clearly distinguishable from the present case. In *Csulik,* the court noted that the policy in question set forth conflicting provisions as to which state's laws should apply to a claim in certain situations. These conflicting provisions created a blatant ambiguity. The policy provided that "any terms of the policy which may be in conflict with statutes of *the state in which the policy is issued* are hereby amended to conform"; "arbitration * * * is binding * * * if

the award is within the limits of the state financial responsibility laws *where your auto is principally garaged*"; legal action for a UM claim, "must begin within the time limit allowed * * * in the state where the accident occurred"; and, also with respect to a UM claim, that legal action must be filed *"within two years or the time limit allowed by law: a) for death action if the claim involves the death of an insured; or b) for bodily injury actions of the claim involves injury to an insured but not death. The laws of the state in which the accident occurred* will determine these time limits." (Emphasis *sic* in *Csulik*.) *Id.*, at 19, 723 N.E.2d at 92.

The *Csulik* court also noted that "[t]he contract language sets the state for the insured's claim against the insurer to be controlled by the law of the accident state. No contract language states otherwise. One could logically conclude that the law of the accident state also determines plaintiff's rights under the policy." *Id.* at 20, 723 N.E.2d at 92. The court based its decision on the drafter's strong manifestation that a UM/UIM claim be controlled by the law of the state of the accident, despite some contravening attempts to otherwise establish a controlling law.

In the present case, there is no ambiguity concerning which state's law should apply to a UM claim. Part IV of the policy addressing UM/UIM claims contains a clear and expressed intent that West Virginia law apply to such claims. This section provides coverage for property "owned by an insured and located in West Virginia," and defines an "insured motor vehicle" as a motor vehicle owned by the named insured or spouse and registered in West Virginia. This section also defines "uninsured motor vehicle" in the context of the West Virginia Motor Vehicle Safety Responsibility Law. There is no provision anywhere in the policy that any other forum's law applies under any circumstances. Accordingly, even under the *Csulik* analysis, West Virginia law applies in the present matter.

 Having determined that West Virginia law applies, we must now address the substantive law of that state. In *Davis v. Foley* (1995), 193 W.Va. 595, 457 S.E.2d 532, the Supreme Court of Appeals of West Virginia held that "damages in a wrongful death action arise out of the death of the decedent thereby making a wrongful death action a derivative claim." The decedent's death constitutes a single injury entitling only the decedent's personal representative to bring a cause of action against the tortfeasor. *Id.*; W.V. Code 55–7–6. Although W.V. Code 55–7–6 provides that certain of a decedent's relatives are entitled to share in damages recovered by a decedent's personal representative, there is no statutory provision, as in Ohio, that specified relatives are presumed to have suffered a separate injury.

The Supreme Court of Appeals of West Virginia has determined that a separate cause of action exists for insurance purposes if the policy in question

includes language that a wrongful death constitutes a separate bodily injury, not a derivative claim, to the insured. *Davis v. Foley,* paragraph four of the syllabus. For example, West Virginia law would allow appellant's UM claim if the policy had included loss of consortium or services under its definition of "bodily injury." *Dairyland Ins. Co. v. Westfall* (1997), 199 W.Va. 334, 338, 484 S.E.2d 217, 221.

In the present case, Section IV, Coverage J of the insurance policy with respect UM coverage provides coverage:

"To pay all sums which the insured or his legal representative shall be legally entitled to recover as damages from the operator of an uninsured motor vehicle because of (a) bodily injury, sickness, or disease, including death resulting therefrom, hereinafter called 'bodily injury', sustained by the insured * * *."

Section IV does not further define "bodily injury." However, Section I defines "bodily injury" for purposes of liability under Section I as "bodily harm, sickness, disease including death that results therefrom."

As the policy does not provide that a derivative wrongful death claim constitutes a separate and distinct injury to the insured, appellant and his children have no right to bring a UM claim for the wrongful death of Jesse R. Jordan under West Virginia law.

We hold that the trial court was correct in granting appellee summary judgment. For all of the foregoing reasons, appellant's assignment of error lacks merit, and we affirm the judgment of the trial court.

*Judgment affirmed.*

VUKOVICH, P.J., and GENE DONOFRIO, J., concur.