Lloyd CHASE, et al., Plaintiffs,

v.

Adam HUMRICHOUSER,
et al., Defendants.

No. 5:01CV55.

United States District Court,
N.D. Ohio,
Eastern Division.

July 15, 2002.

Mark C. Brookes, Thomas P. Maney, Jr., Maney & Brookes, Columbus, OH, for Plaintiffs.

Steven J. Forbes, Moscarino & Treu, Cleveland, OH, for Defendants.

Ace–Ime Holdings, defendant.

*MEMORANDUM OPINION
AND ORDER*

LIMBERT, United States Magistrate Judge.

The instant case is before the Court for consideration of Defendant Cigna Insurance Company n.k.a. ACE–IME Holdings' Motion for Summary Judgment pursuant to Rule 56 of Federal Rules of Civil Procedure. *See* ECF Dkt. # 26. In the instant case, Plaintiff Lloyd Chase brought a negligence claim against Defendant Adam Humrichouser and a declaratory judgment claim for uninsured motorist/underinsured motorist (UM/UIM) coverage against Defendant Cigna Insurance Company n.k.a. ACE–IME Holdings. *See* ECF Dkt. # 1. The Court exercises jurisdiction over the matter pursuant to 28 U.S.C. § 1332(a)(1). For the following reasons, the Court GRANTS Defendant Cigna Insurance Company n.k.a. ACE–IME Holdings' Motion for Summary Judgment based upon choice of law principles and Michigan law. *See* ECF Dkt. # 26.

## I. FACTUAL AND PROCEDURAL HISTORY

On February 19, 2000, Plaintiff Lloyd Chase (Plaintiff)[1] was driving a tractor-trailer westbound on State Route 30 near Orrville, Ohio. *See* ECF Dkt. # 41 at 3–4. Plaintiff, a Michigan resident, was hauling a full load of bricks to Gailesville, Wisconsin in a tractor trailer owned by his employer, Transit Group, Inc. (Transit), a Wisconsin corporation. *See id.* According to Plaintiff, he garaged the tractor-trailer at his residence in Michigan. *See id.* at 17–18.

As he proceeded westbound along State Route 30, Plaintiff received notice from another truck driver traveling ahead of him that an oncoming vehicle had crossed the centerline into Plaintiff's lane. *See* ECF Dkt. # 41 at 9. Plaintiff tried to steer to the left to avoid the oncoming vehicle, but struck the rear of the vehicle before going into the median. *See id.* at 10. Plaintiff's tractor-trailer overturned in the median. *See id.* at 11. The oncoming vehicle was driven by Defendant Adam Humrichouser (Humrichouser). *See* ECF Dkt. # 1 at ¶ 2. As a result of the accident, Plaintiff sustained serious physical injuries, including the amputation of his left leg above the knee. *See id.*

Following the accident neither the Plaintiff nor his representatives contacted Humrichouser to determine whether he had insurance. *See* ECF Dkt. # 41 at 25. Plaintiff asserts that Humrichouser did not have insurance at the time of the accident. *See id.* Plaintiff buttressed this averment by testifying that he contacted Humrichouser's insurance company, as indicated on the accident report, and was told that Humrichouser's coverage had been terminated for failure to make premium payments. *See id.* Plaintiff testified that he had a personal motor vehicle insurance policy with the Titan Insurance Company (Titan) at the time of the accident. *See id.* at 24. However, Plaintiff did not provide notice to Titan regarding the accident and did not make a claim for benefits pursuant to his policy. *See id.* Plaintiff did apply for and receive workers' compensation.

---

1. The Court will refer to Plaintiff Lloyd Chase as Plaintiff throughout this order. Plaintiff's wife, Karol Chase, is also a named plaintiff in the instant case. *See* ECF Dkt. # 1. She has brought a loss of consortium claim. *See id.* Karol Chase asserts that by reason of the injuries sustained by her husband, due to the negligent acts of Defendant Humrichouser, that she has been deprived of the consort, companionship, society, affection, and support of her husband. *See id.* at ¶ 8. Karol Chase's claim is not relevant to the issues set forth in Cigna's summary judgment motion. *See id.*

*See id.* at 39. Plaintiff received workers' compensation until the Wisconsin Bureau of Workers' Compensation determined that Plaintiff had fully recovered and was ready to return to work. *See id.* Plaintiff incurred over $200,000 in medical bills, but Transit provided health insurance to Plaintiff that paid all of his medical bills. *See id.* at 55.

On January 8, 2001, Plaintiff filed a Complaint in this Court against Humrichouser and Cigna Insurance Company n.k.a. ACE–IME Holdings (Cigna).[2] *See* ECF Dkt. # 1. Cigna filed an Answer on May 10, 2001. *See* ECF Dkt. # 10. Plaintiff subsequently failed to obtain service upon Humrichouser. *See* ECF Dkt. # 11. Having failed to obtain service, the Court dismissed Plaintiff's Complaint against Humrichouser *without prejudice.* *See* ECF Dkt. # 20. Plaintiff maintained the instant action against Cigna to recover uninsured/underinsured motorist (UM/UIM) coverage under a business auto policy and a commercial general liability policy issued by Cigna to Plaintiff's employer, Transit. *See* ECF Dkt. # 1.

Cigna issued a business auto policy (BA policy), Policy Number LMT H07320437, to Carroll Fulmer Group, Inc. under which Transit was identified as a named insured. *See* ECF Dkt. 28, exhibit B. The BA policy had originally been issued January 1, 1998 and was renewed for subsequent yearly periods through January 1, 2001. *See id.* At the time of the accident, the BA policy provided liability coverage with limits of $1,000,000.00. *See id.* Transit expressly rejected in writing UM/UIM coverage for the policy period of January 1, 1999 to January 1, 2002. *See* ECF Dkt. 28, exhibit D.

Cigna also issued a commercial general liability policy (CGL policy), Policy Number GLP G19322531, to Carroll Fulmer Group, Inc. under which Transit was identified as a named insured for the policy period during which the subject accident occurred. *See* ECF Dkt. 28, exhibit C. The CGL Policy provided coverage under certain circumstances with a general aggregate limit of $1,000,000.00 and an each accident occurring limit of $1,000,000.00. *See id.* This policy did not contain a provision for UM/UIM coverage. *See id.*

On March 1, 2002, Cigna filed a Motion for Summary Judgment seeking dismissal of Plaintiff's Complaint *with prejudice.* *See* ECF Dkt. # 26. Based upon Ohio's choice of law principles, Cigna argues that Michigan law applies to the Plaintiff's claim for UM/UIM coverage. *See id.* at 4–6. Under Michigan law, Cigna espouses that Plaintiff is not entitled to UM/UIM coverage under either Transit's BA policy or CGL Policy. *See id.* Cigna emphasizes that Transit expressly rejected UM/UIM coverage with regard to the BA policy, and that the CGL policy did not provide for UM/UIM coverage. *See id.*[3]

On April 4, 2002, Plaintiff responded and filed a memorandum in opposition to Cigna's Motion for Summary Judgment. *See* ECF Dkt. # 31. Plaintiff argues that Cigna's offer of UM/UIM insurance coverage to Transit failed to comply with Ohio law. *See id.* at 4 (citing *Linko v. Indemn. Ins. Co. of N. Am.,* 90 Ohio St.3d 445, 739 N.E.2d 338 (2000)). Plaintiff maintains that *Linko* requires a valid offer of UM/UIM coverage to contain a brief description of the coverage, the premium for that coverage, and an express statement of the

---

**2.** Defendant Cigna Insurance Company is now known as ACE–IME Holdings, but the Court will refer to this Defendant as Cigna throughout this order. *See* ECF Dkt. # 10.

**3.** Cigna filed a reply brief on April 19, 2002. *See* ECF Dkt. # 34.

UM/UIM coverage limits. *See id.*[4] Plaintiff contends that the form provided by Cigna that Transit signed rejecting UM/UIM coverage did not contain the items set forth in *Linko*, and therefore is invalid under Ohio law. *See id.*

If Cigna's UM/UIM rejection form is invalid under Ohio law, Plaintiff asserts that UM/UIM coverage exists by operation of law in the instant case pursuant to Ohio Revised Code § 3937.18. *See* ECF Dkt. # 31 at 6 (citing *Abate v. Pioneer Mutual Cas. Co.*, 22 Ohio St.2d 161, 258 N.E.2d 429 (1970), *and Selander v. Erie Ins. Group*, 85 Ohio St.3d 541, 546, 709 N.E.2d 1161 (1999)). Assuming UM/UIM coverage exists by operation of law, Plaintiff contends that he is entitled to UM/UIM coverage under the insurance policies issued by Cigna to Transit pursuant to the Ohio Supreme Court's holding in *Scott–Pontzer v. Liberty Mut. Fire Ins. Co.*, 85 Ohio St.3d 660, 710 N.E.2d 1116 (1999).[5] *See id.*

4. Plaintiff also states that *Linko* requires a valid offer of UM/UIM insurance coverage to contain the name and signature of each named insured under the policy, along with written authorization by each subsidiary company for the parent corporation to reject UM/UIM on its behalf. *See* ECF Dkt. # 31 at 4.

5. In *Scott–Pontzer*, Christopher T. Pontzer, an employee of Superior Dairy, was killed in an automobile accident while driving home from work in his wife's car. Pontzer was killed as the result of the negligence of Troy W. Taylor, who had an automobile liability insurance policy with limits of $100,000 per person and $300,000 per accident. At the time of the accident, Superior Dairy had commercial automobile liability insurance and an umbrella/excess insurance policy with Liberty Mutual Fire Insurance Company. Both policies identified Superior Dairy as the named insured, but only the commercial automobile liability policy of insurance contained an underinsured motorist coverage provision. The uninsured/underinsured motorist coverage form defined an "insured" for purposes of underinsured motorist coverage as the following:

B. Who Is An Insured
1. You.
2. If you are an individual, any family member.
3. Anyone else occupying a covered auto or a temporary substitute for a covered auto. The covered auto must be out of service because of its breakdown, repair, servicing, loss or destruction.
4. Anyone for damages he or she is entitled to recover because of bodily injury sustained by another insured.

*Scott–Pontzer*, 85 Ohio St.3d at 663, 710 N.E.2d at 1120. While the definition of "insured" differs in the BA policy in the instant case from the definition in *Scott–Pontzer*, Plaintiff avers that he is entitled to coverage based upon the theory developed in *Scott–Pontzer*. In *Scott–Pontzer*, Kathryn Scott–Pontzer, Christopher Pontzer's wife, brought an action as surviving spouse and executrix of her husband's estate asserting that she was entitled to underinsured motorist benefits under Superior Dairy's automobile liability policy and umbrella/excess policy because her husband was an employee of Superior Dairy. The case proceeded through the courts to the Ohio Supreme Court. Upon examining the policies at issue, the Ohio Supreme Court found the definitions of "insured" in the commercial liability policy ambiguous and held that:

Rather, it would be reasonable to conclude that "you," while referring to Superior Dairy, also includes Superior's employees, since a corporation can act only by and through real live persons. It would be nonsensical to limit protection solely to the corporate entity, since a corporation, itself, cannot occupy an automobile, suffer bodily injury or death, or operate a motor vehicle. Here, naming the corporation as the insured is meaningless unless the coverage extends to some person or persons—including to the corporation's employees.

*Scott–Pontzer*, 85 Ohio St.3d at 664, 710 N.E.2d at 1119. The Ohio Supreme Court also ruled that Pontzer was an insured under his employer's umbrella/excess policy even though that policy did not include underinsurance. *See Scott–Pontzer*, 85 Ohio St.3d at 665, 710 N.E.2d at 1120. The court reasoned that "[a]bsent any showing that underinsured coverage was offered and rejected, such coverage is included in the policy" by operation

## II. LAW AND ANALYSIS

### A. CIGNA'S MOTION FOR SUMMARY JUDGMENT

#### 1. CHOICE OF LAW

The Court shall address Cigna's choice of law argument first. Cigna argues that Ohio choice of law rules mandate the application of Michigan law to its BA and CGL insurance policies. *See* ECF Dkt. # 26 at 4–6. Cigna further asserts that Michigan law does not preclude a party from rejecting UM/UIM coverage, or alternatively require an insurer to offer UM/UIM insurance. *See id.* For these reasons, Cigna urges this Court to find as a matter of law that Plaintiff is not entitled to UM/UIM coverage under either of the insurance policies issued to Transit by Cigna. *See id.*

Rule 56(c) of the Federal Rules of Civil Procedure governs summary judgment motions and provides, in pertinent part:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to the interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

FED.R.CIV.P. 56(c). Summary judgment is proper when no genuine issues of fact exist and the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Under Rule 56, a party is entitled to summary judgment where the documentary evidence produced by the parties permits only one conclusion. *See Allen v. Wood*, 970 F.Supp. 824, 828 (E.D.Wash.1997) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

The party moving for summary judgment bears the initial burden of informing the court of the basis for the motion, and must identify the portions of " 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp., v. Catrett*, 477 U.S. at 323, 106 S.Ct. 2548 (quoting FED.R.CIV.P. 56(c)). This initial burden can be discharged by the moving party by showing that the nonmoving party has failed to establish an essential element of the nonmoving party's case for which he or she bears the ultimate burden of proof at trial. *See Celotex*, 477 U.S. at 323, 106 S.Ct. 2548; *Morales v. American Honda Motor Co., Inc.*, 71 F.3d 531, 535 (6th Cir.1995). The evidence submitted must be viewed in a light most favorable to the nonmoving party to determine whether a genuine issue of material fact exists. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

If the moving party meets this burden, then the nonmoving party must take affirmative steps to avoid the entry of a summary judgment. *See* FED.R.CIV.P. 56(e). The nonmoving party must present additional evidence beyond the pleadings. *See*

---

of law under the version of Ohio Revised Code § 3937.18 in effect at the time of the contract. *See id.* The court also held that Pontzer did not have to be acting within the scope of his employment in order to collect under the commercial automobile liability policy because the policy did not contain such a restriction. *See id.* The court further held that the scope of employment language in the umbrella/excess policy was inoperative to Pontzer because it applied only to the excess liability portion of the policy, not underinsured coverage, given that the court had already found that Liberty Mutual failed to offer underinsured motorist coverage to Superior Dairy. *See* 85 Ohio St.3d at 666, 710 N.E.2d at 1120.

*id.* The nonmoving party must do this by presenting more than a scintilla of evidence in support of his or her position. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Summary judgment must be granted unless sufficient evidence exists that favors the nonmoving party such that a judge or jury could reasonably return a verdict for that party. *See id.* at 249, 106 S.Ct. 2505. The Court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* If a party fails to make a showing that is "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," then the Court is required to enter summary judgment. *See Celotex*, 477 U.S. at 322, 106 S.Ct. 2548.

■ Upon review of the summary judgment standard, the Court grants Cigna's Motion for Summary Judgment based upon Ohio choice of law principles. *See* ECF Dkt. # 26. A federal court exercising diversity jurisdiction must apply the law of the forum state, including that state's choice of law principles. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *Miller v. State Farm Mutual Automobile Ins. Co.*, 87 F.3d 822, 824 (6th Cir.1996). In the instant case, the Court must look to Ohio choice of law principles in order to determine the applicable state law..

■ In Ohio, which follows the Restatement (Second) of Conflict of Laws, a court must determine whether the cause of action sounds in contract or tort before applying choice of law principles because differing choice of law principles apply depending upon whether the cause of action is based on contract or tort. *See Ohayon v. Safeco Ins. Co. of Illinois*, 91 Ohio St.3d 474, 747 N.E.2d 206 (2001) (citing Restatement (Second) of Conflict of Law at 18, § 7, cmt. b). Therefore, the first step for this Court is to determine whether Plaintiff's cause of action sounds in contract or sounds in tort under Ohio law.

■ An examination of Ohio law clearly establishes that Plaintiff's cause of action against Cigna sounds in contract. The Ohio Supreme Court has held that "an action by an insured against his or her insurance carrier for payment of underinsured motorist benefits sounds in contract rather than tort, even though tortious conduct triggers applicable contractual provisions." *Ohayon*, 91 Ohio St.3d at 480, 747 N.E.2d 206 (citing *Landis v. Grange Mut. Ins. Co.*, 82 Ohio St.3d 339, 341, 695 N.E.2d 1140 (1998)). The *Ohayon* court also held that "[q]uestions involving the nature and extent of the parties' rights and duties under an insurance contracts' underinsured motorist provisions shall be determined by the law of the state selected by applying the rules in Sections 187 and 188 of the Restatement of the Law 2d, Conflict of Laws (1971)." *Id.* at syllabus. In the instant case, Plaintiff is alleging that he is an insured under Transit's insurance contracts issued by Cigna by operation of law based upon a series of Ohio Supreme Court cases including *Scott–Pontzer, Linko, and Selander, supra. See* ECF Dkt. # 1. Plaintiff is seeking to determine the nature and extent of his rights and Cigna's duties under the insurance contracts and Plaintiff is seeking recovery based upon these contracts and their terms. *See Ohayon*, 91 Ohio St.3d at 480, 747 N.E.2d 206, citing and quoting *Motorists Mut. Ins. Co. v. Tomanski*, 27 Ohio St.2d 222, 223, 271 N.E.2d 924 (1971); *see also Fellows–Knox v. Genesis Ins. Co.*, 2002 WL 857217, *2 (N.D.Ohio Mar. 18, 2002) (on diversity jurisdiction issue relating to *Scott–Pontzer* cases, Court states

view that underinsured motorist coverage is contractual whether it exists by express terms or operation of law). For these reasons, and Plaintiff's lack of argument to the contrary, the Court finds that the Ohio choice of law principles for contracts apply in the instant case.

Ohio has adopted sections 187 and 188 of the Restatement (Second) of Conflicts to analyze choice of law principles for causes of action based upon contract. *See Schulke Radio Prod., Ltd. v. Midwestern Broadcasting Co.*, 6 Ohio St.3d 436, 453 N.E.2d 683 (1983) (adopting section 187) and *Gries Sports Ent., Inc. v. Modell*, 15 Ohio St.3d 284, 473 N.E.2d 807 (1984) (adopting section 188). Section 187 is inapplicable in the instant case as it applies only when it is established that the parties to a contract have chosen the state of the law to apply to their contract. *See* Restatement (Second) of Conflict of Laws § 187 (1971). This has not been established in the instant case and the parties do not dispute this fact.

 Section 188 governs in the absence of an effective choice of law provision in the contract. Section 188 provides that the local law of the state with the "most significant relationship" to the transaction and parties applies to determine the rights and duties of the parties to a contract. Restatement (Second) of Conflict of Laws § 188 (1971). To help aid in determining the state that has the most significant contacts, section 188 cites to principles listed in section 6 of the Restatement (Second) Conflict of Laws. *See id.* These principles include:

a. the needs of the interstate and international systems,

b. the relevant policies of the forum,

c. the relevant policies of other interested states and the relative inter-ests of those states in the determination of the particular issue,

d. the protection of justified expectations,

e. the basic policies underlying the field of law,

f. certainty, predictability and uniformity of result, and

g. ease in the determination and application of the law to be applied.

Restatement (Second) of Conflict of Laws § 6. In helping to develop the principles of Section 6, Section 188 requires the Court to consider the following factors:

a. the place of contracting,

b. the place of negotiation of the contract,

c. the place of performance,

d. the location of the subject matter of the contract, and

e. the domicil, residence, nationality, place of incorporation and place of business of the parties.

Restatement (Second) of Conflict of Laws § 188. Additionally, the Ohio Supreme Court has stated that, "In insurance cases, this focus will often correspond with the Restatement's view that the rights created by an insurance contract should be determined 'by the local law of the state which the parties understood was to be the principal location of the insured risk during the term of the policy, unless with respect to the particular issue, some other state has a more significant relationship *** to the transaction and the parties.'" *Ohayon*, 91 Ohio St.3d at 479, 747 N.E.2d 206 (quoting Restatement (Second) of Conflict of Laws at 610, § 193). "In the case of an automobile liability policy, the parties will usually know beforehand where the automobile will be garaged at least during most of the period in question." *Id.* at 479, 480, 747 N.E.2d 206 (quoting Restatement (Second)

of Conflict of Law at 611, § 193, cmt. b). "The principal location of the insured risk described in Section 193 neatly corresponds with one of Section 188's enumerated factors—the *location of the subject matter of the contract.*" *Id.* (emphasis added).

Compared to the broad, nebulous principles outlined in section 6, the more exact factors outlined in section 188, along with the direction provided by the Ohio Supreme Court in *Ohayon, supra,* furnish this Court with much more guidance.[6] In the instant case, Cigna emphasizes that Plaintiff is a Michigan resident and that the tractor-trailer he was driving during the accident was principally garaged at his residence in Michigan. *See* ECF Dkt. # 26 at 5, and ECF Dkt. # 41 at 17. Cigna also points out that the insurance policies, the BA and CGL policies, under which Plaintiff seeks UM/UIM coverage were issued to non-party Transit, which is based in Wisconsin. *See id.* The Court notes that Cigna is based in Philadelphia, Pennsylvania. *See* ECF Dkt. # 1. Plaintiff does not contend that either of the existing parties to the instant case or the tractor-trailer have any connection to Ohio. *See* ECF Dkt. # 31.

Given the Plaintiff's Michigan residence and the fact that the tractor-trailer was stored at his residence, the Court finds that the majority of the exact factors outlined in section 188, *supra,* and in particular, the place of performance, the location of the subject matter of the contract, and the residence of the parties favor the application of Michigan law to the Plaintiff's claim for UM/UIM coverage in the instant case. *See* ECF Dkt. # 26 at 5.[7] Most importantly, the principal location of the insured risk and the location of the subject matter of the insurance polices was Michigan because the tractor-trailer was garaged in Michigan at Plaintiff's residence *See id., and Ohayon, supra.*

The Court notes that several Ohio courts have applied the law of the state where the automobile at issue was garaged to determine insurance coverage issues, even in cases where the accidents occurred in Ohio. *See Jordan v. State Farm Mut. Auto. Ins. Co.,* 141 Ohio App.3d 670, 676, 753 N.E.2d 209, 213 (2001) (law of West Virginia where named insured resided and registered and garaged his car, rather than Ohio where insured's parent was killed in automobile accident, applied to named insured's claim for uninsured mo-

---

6. In the instant case, the broad canons in Section 6 alone provide little guidance to the Court. Factor (a) favors Michigan in that Michigan insurance law seeks to serve the needs of the interstate and international systems by enabling insurance companies to accurately ascertain and price their assumed risks. Factor (b) favors Ohio as the forum state because Ohio seeks to provide additional protection to its citizens when the tortfeasor is underinsured. Factor (c) favors Michigan as that state seeks to protect the reasonable expectations of insurers and insureds. Factor (d) favors both states equally as both seek to protect the expectations of its citizens, whether employers, employees or insurers. Factor (e) favors Michigan as its law is more aligned with the general principles of contract interpretation. Factor (f) is not determinative as a

decision in this case will not achieve certainty, predictability or uniformity of result. Factor (g) favors both states equally as a federal court sitting in diversity has no more difficulty applying Michigan law than Ohio law, although Ohio law presents a more comprehensive task.

7. The place of contracting and negotiation factors outlined in section 188, *supra,* favor the application of Wisconsin and Pennsylvania law given the residences of Transit and Cigna, respectively. *See* ECF Dkt. # 26. The only connections to Ohio that Plaintiff relies upon are the accident location and his testimony that he had traveled to Ohio fifteen prior times during an indeterminate stretch of time. *See* ECF Dkt. # 31.

torist benefits); *see also Mayfield v. Chubb Ins. Co.*, No.2001CA00244, 2002 WL 253791, *2 (Ohio App. 5 Dist. Feb. 11, 2002), unpublished, *andPennsylvania General Ins. Co. v. Shoults*, No. C2–00–1107, 2002 WL 485017, *4–5 (S.D.Ohio March 28, 2002), unpublished.

Accordingly, the Court finds as a matter of law that Ohio choice of law principles clearly support the application of Michigan law to the instant case. For the foregoing reasons, Michigan manifestly has the "most significant relationship" to the insurance policies at issue in the instant case. *See id.*

### 2. *OUTCOME UNDER MICHIGAN LAW*

■ Consequently, the question becomes whether Michigan law has adopted or otherwise followed the Ohio Supreme Court's holdings in *Scott–Pontzer, Linko, and Selander* pertaining to a valid offer and rejection of UM/UIM coverage, and the extent of UM/UIM coverage provided by operation of law. The task of this court when exercising diversity jurisdiction is to apply the same law that would be applied by the Michigan state courts. *See Erie R.R. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). In applying Michigan law, this Court first looks to the Supreme Court of Michigan. If that court has decided the issue, this Court is bound by that decision unless convinced that the Michigan Supreme Court would overrule its prior holding based upon the facts before this Court. *See Kirk v. Hanes Corp. of North Carolina*, 16 F.3d 705, 707 (6th Cir.1994). If the Supreme Court of Michigan has not decided the issue, this Court should consider whether a Michigan Court of Appeals has decided the issue. *See id.; Garrett v. Akron–Cleveland Auto Rental, Inc.*, 921 F.2d 659, 662 (6th Cir.1990). State appellate court decisions are usually deemed authoritative unless there is a strong showing that the state's highest court would decide the issue differently. *See Garrett*, 921 F.2d at 662. The Court may also consider Supreme Court of Michigan dicta, restatements of the law, law review commentaries, and the majority rule among other states. *See Garden City Osteopathic Hospital v. HBE Corp.*, 55 F.3d 1126, 1130 (6th Cir.1995).

■ The state of Michigan repealed its mandated uninsured and underinsured motorist protection amendment in 1973, the same year that the No Fault Act was passed requiring insurers to "pay benefits for accidental bodily injury arising out of the ownership, operation, maintenance or use of a motor vehicle as a motor vehicle." Mich.Comp.Laws Ann. § 500.3010 (repealed effective October 1, 1973 by P.A. 1972, No. 345 § 2); Mich.Comp.Law 500.3105(1); *Miller v. Farm Bureau Mut. Ins. Co.*, 218 Mich.App. 221, 225–226, 553 N.W.2d 371 (1996). Underinsurance motorist coverage is therefore considered optional insurance and "the scope, coverage, and limitations of underinsurance protection are governed by the insurance contract and the law pertaining to contracts." *Mate v. Wolverine Mut. Ins. Co.*, 233 Mich.App. 14, 19, 592 N.W.2d 379, 381 (citing *Rohlman v. Hawkeye–Security Ins. Co.*, 442 Mich. 520, 524–525, 502 N.W.2d 310 (1993) and *Auto–Owners Ins. Co. v. Leefers*, 203 Mich.App. 5, 10–11, 512 N.W.2d 324 (1993)).

■ In *Auto–Owners Ins. Co. v. Churchman*, 440 Mich. 560, 567, 489 N.W.2d 431, 434 (1992), the Michigan Supreme Court described the tenets its adheres to when it interprets an insurance contract:

An insurance policy is much the same as any other contract. It is an agreement between the parties in which a court will determine what the agreement was and

effectuate the intent of the parties. Accordingly, the court must look at the contract as a whole and give meaning to all terms. Further, any clause in an insurance policy is valid as long as it is clear, unambiguous and not in contravention of public policy. This Court cannot create ambiguity where none exists.

*Id.* at 566–567, 489 N.W.2d 431 (quotations and citations omitted). The Michigan Supreme Court also made clear that clear and specific exclusions must be given effect because it is impossible to hold an insurance company liable for a risk it did not assume. *See id.* Furthermore, Michigan courts have held that because uninsured motorist benefits are not statutorily required, the language of the individual's insurance policy dictates under what conditions uninsured motorist benefits will be provided. *See Auto–Owners Ins. Co. v. Harvey,* 219 Mich.App. 466, 470, 556 N.W.2d 517, 519. Michigan law does not contain Ohio's comprehensive requirements for an effective offer of UM/UIM coverage, or Ohio's mandate of UM/UIM coverage by operation of law in the absence of such a valid offer. *See Linko, Selander, and Abate, supra.*[8]

■ Applying Michigan law to the two insurance policies at issue in the instant case, the BA policy and the CGL policy, the Court finds that Plaintiff is not entitled to UM/UIM coverage under either policy. *See* ECF Dkt. # 26. First, the BA policy, an automotive liability policy, contains a written, unambiguous offer and rejection of UM/UIM coverage executed by the President of Transit. *See* ECF Dkt. # 26 at 8, *and* ECF Dkt. # 28, exhibit D. The Court finds that this policy exclusion is clear and specific and must be given effect

under Michigan law. *See id., and Churchman, supra.* Thus, because Transit unambiguously rejected UM/UIM coverage in its BA policy, Plaintiff cannot recover pursuant to this policy. *See id.*

■ In terms of the CGL policy, a general commercial insurance policy, the Court agrees with Cigna that the plain language of the CGL policy cannot be interpreted to provided UM/UIM coverage. *See* ECF Dkt. # 26 at 7, *and* ECF Dkt. # 28, exhibit C. The language of the CGL policy dictates under what conditions UM/UIM benefits will be provided, and the Court finds that the CGL policy does not include any provisions that could be read to provide UM/UIM coverage in the instant case. *See id., and Harvey, supra.* The Court also acknowledges that Michigan law does not require an insurer to offer UM/UIM benefits. *See id.* Therefore, based upon the foregoing, Plaintiff cannot recover UM/UIM benefits pursuant to the CGL policy.

Based upon the above discussion, and a paucity of evidence that the Michigan Supreme Court would decide the issue differently, this Court concludes that Michigan law does not incorporate or otherwise follow Ohio's *Scott–Pontzer, Linko, and Selander* holdings. Given that Plaintiff's declaratory judgment claim for UM/UIM coverage is based upon these series of Ohio cases, the Court GRANTS Cigna Insurance Company n.k.a. ACE–IME Holdings' Motion for Summary Judgment (ECF Dkt. # 26), and accordingly DISMISSES Plaintiffs Lloyd and Karol Chase's declaratory judgment claim against Cigna Insurance Company n.k.a. ACE–IME Holdings *with prejudice* based upon Michigan law. *See* ECF Dkt. # 1.

8. The Court also finds that Michigan common law rejects Ohio's *Scott–Pontzer* theory of recovery of UM/UIM benefits. *See Michigan Township Participating Plan v. Pavolich* 232 Mich.App. 378, 591 N.W.2d 325 (1998).

### III. CONCLUSION

For the foregoing reasons, the Court GRANTS Cigna Insurance Company n.k.a. ACE–IME Holdings' Motion for Summary Judgment (ECF Dkt. # 26), and accordingly DISMISSES Plaintiffs Lloyd and Karol Chase's declaratory judgment claim against Cigna Insurance Company n.k.a. ACE–IME Holdings *with prejudice* based upon choice of law principles and Michigan law. *See* ECF Dkt. # 1.

**IT IS SO ORDERED.**