OPINION
{¶ 1} Appellant Continental Casualty Insurance Company[1]
("Continental") appeals the decision of the Stark County Court of Common Pleas concerning issues of coverage determinations, discovery, arbitration, set off and prejudgment interest. The following facts give rise to this appeal.
 {¶ 2} On November 24, 1997, Michael Harris negligently operated his vehicle causing it to collide with Appellee Dan Hendry's vehicle. At the time of the accident, Dan Hendry was employed as a part-time route carrier and "hawker" for The Canton Repository, a subsidiary of The Thomson Corporation. Dan Hendry suffered a serious closed head injury and incurred medical bills totaling $24,749.17. Appellee Dan Hendry claims he suffers from psychological and behavioral problems as a result of the closed head injury.
 {¶ 3} Following the accident, Dan Hendry did not file suit against the tortfeasor. However, he received the policy limits of $100,000 from the tortfeasor's auto liability insurance carrier. Dan Hendry also received $150,000 from his personal auto insurer. Thereafter, on September 11, 2000, Dan Hendry, by and through his guardian, filed a complaint for declaratory judgment. The complaint requested UIM coverage under a business auto and CGL policies issued by Continental to The Thomson Corporation. The complaint also requested coverage under policies issued by Indiana Insurance Company ("Indiana"), to the Stark County Board of Commissioners, the employer of Dan Hendry's wife, Jennifer Hendry. On March 19, 2001, Jennifer Hendry and appellant's daughter, Jessica Hendry, intervened as plaintiffs in the lawsuit.
 {¶ 4} Continental issued the business auto policy, to The Thomson Corporation, in Stamford, Connecticut, for the policy period March 31, 1996 to March 31, 1999. The business auto policy provides $1 million in auto liability coverage and $1 million in UM/UIM coverage. Continental issued the CGL policy, to The Thomson Corporation, in Stamford, Connecticut, for the policy period March 31, 1996 to March 31, 1999. The CGL policy has limits of $1 million.
 {¶ 5} On July 12, 2001, the trial court granted Dan Hendry's motion for arbitration. Continental appealed. On March 25, 2002, we reversed the decision of the trial court concluding that arbitration could not be ordered until the trial court made a determination that coverage existed under the policies.[2] Upon remand, the trial court set a deadline for the filing of dispositive motions. Appellees, Continental and Indiana filed motions for summary judgment.
 {¶ 6} On May 28, 2002, the trial court granted appellees' motion for summary judgment, on the issue of coverage, and denied Continental's motion for summary judgment. The trial court determined coverage existed under both the business auto and CGL policies. The trial court also ordered the matter to arbitration. The trial court did not rule on Indiana's motion for summary judgment because Indiana settled with appellees during mediation. The trial court certified that "[t]his shall constitute a final, appealable Order." Continental appealed. Appellees moved to dismiss the appeal on the grounds that the certification was not equivalent to a certification of "no just cause for delay," under Civ.R. 54(B). We agreed and dismissed Continental's appeal.[3]
 {¶ 7} Following dismissal of the second appeal, this matter proceeded to arbitration on September 24, 2002. On October 1, 2002, the arbitrators filed an arbitration report and award. The arbitrators awarded $125,000 to Appellee Jessica Hendry and $200,000 to Appellee Jennifer Hendry. Two of the three arbitrators agreed to award $4.1 million to Appellee Dan Hendry. Appellees filed separate motions to confirm the arbitration award and for prejudgment interest. Appellees also requested prejudgment interest from November 24, 1997, the date of the accident.
 {¶ 8} Continental opposed appellees' motions and filed a motion for reconsideration of the trial court's interlocutory coverage determination; motion to determine reduction and setoff based on the tortfeasor's $100,000 liability limits and payments received from Appellee Dan Hendry's personal UIM auto carrier and Indiana; and a motion for delay in confirmation of the arbitration award to permit the preparation of a transcript and briefing regarding irregularities in the proceedings.
 {¶ 9} The trial court conducted a hearing on the pending motions on October 30, 2002. On November 4, 2002, the trial court filed a judgment entry. The trial court affirmed its coverage determinations; concluded that the tortfeasor's policy limits and other UM/UIM benefits received by appellees should be deducted from the total awards of the arbitrators; and concluded that appellees were jointly entitled to $2 million, plus prejudgment interest from November 24, 1997. Further, the trial court reserved the right to determine the allocation of funds among the respective appellees and denied Continental's request to delay confirmation of the arbitration award.
 {¶ 10} Subsequently, Continental filed a motion to vacate the arbitration award. The trial court denied Continental's motion on November 27, 2002. Continental filed its notice of appeal and sets forth the following assignments of error for our consideration:
 {¶ 11} "I. THE TRIAL COURT ERRED WHEN IT DETERMINED THAT PLAINTIFFS ARE ENTITLED TO UIM COVERAGES UNDER THE CONTINENTAL BUSINESS AUTO POLICY ISSUED TO THE THOMSON CORPORATION.
 {¶ 12} "II. THE TRIAL COURT ERRED WHEN IT DETERMINED THAT PLAINTIFFS ARE ENTITLED TO UIM COVERAGES UNDER THE COMMERCIAL GENERAL LIABILITY POLICY ISSUED BY CONTINENTAL TO THE THOMSON CORPORATION.
 {¶ 13} "III. THE TRIAL COURT ERRED WHEN IT BARRED CONTINENTAL FROM TAKING PLAINTIFF DAN HENDRY'S DEPOSITION, AND DECLARED HIM TO BE INCOMPETENT TO TESTIFY.
 {¶ 14} "IV. THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION WHEN IT DENIED CONTINENTAL'S MOTION TO VACATE THE ARBITRATION AWARD.
 {¶ 15} "V. THE TRIAL COURT ERRED WHEN IT ENTERED JUDGMENT AGAINST CONTINENTAL WITHOUT APPROPRIATE REDUCTIONS AND SET-OFFS BASED ON THE TORTFEASOR'S POLICY LIMITS, AND RECEIPT OF OTHER INSURANCE BENEFITS.
 {¶ 16} "VI. THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION WHEN IT DETERMINED THAT UIM BENEFITS WERE DUE AND PAYABLE ALMOST THREE YEARS BEFORE PLAINTIFFS PROVIDED ANY NOTICE OF THE ACCIDENT OR CLAIM TO CONTINENTAL."
 "Summary Judgment Standard" {¶ 17} Summary judgment proceedings present the appellate court with the unique opportunity of reviewing the evidence in the same manner as the trial court. Smiddy v. The Wedding Party, Inc. (1987),30 Ohio St.3d 35, 36. As such, we must refer to Civ.R. 56 which provides, in pertinent part:
 {¶ 18} "Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. * * * A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only therefrom, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in his favor."
 {¶ 19} Pursuant to the above rule, a trial court may not enter summary judgment if it appears a material fact is genuinely disputed. The party moving for summary judgment bears the initial burden of informing the trial court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. The moving party may not make a conclusory assertion that the non-moving party has no evidence to prove its case. The moving party must specifically point to some evidence which demonstrates the non-moving party cannot support its claim. If the moving party satisfies this requirement, the burden shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. Vahila v. Hall, 77 Ohio St.3d 421, 429, 1997-Ohio-259, citing Dresher v. Burt, 75 Ohio St.3d 280, 1996-Ohio-107. It is based upon this standard that we review Continental's assignments of error, which we will address out of order.
 II {¶ 20} In its Second Assignment of Error, Continental contends appellees are not entitled to UIM coverage under its CGL policy. Continental sets forth several arguments in support of this assignment of error.
 {¶ 21} First, Continental claims Connecticut law applies to the CGL policy issued to The Thomson Corporation because it does not list any vehicle in Ohio and does not focus on any Ohio operations. Thus, Continental concludes no other state has more significant contact to the transaction than Connecticut. In support of this argument, Continental cites our decision in Mayfield v. Chubb Ins. Co., Stark App. No. 2001CA00244, 2002-Ohio-767.
 {¶ 22} In Mayfield, we concluded that West Virginia law, not Ohio law, applied to the UIM claim of an Ohio resident injured in an automobile accident occurring in Ohio. Id. at 2. In reaching this conclusion, we noted the policy was negotiated in West Virginia and did not contain a list of any Ohio vehicles as covered autos. Id. We distinguished our decision in Mayfield, from our decision in Moore v.Kemper Ins. Cos., Delaware App. No. 02CAE04018, 2002-Ohio-5930, on the basis that the Mayfield policy did not list any vehicle garaged in Ohio. Moore at fn. 3.
 {¶ 23} For the reasons set forth in our recent decision in Amorev. Grange Ins. Co., Richland App. No. 02 CA 70, 2003-Ohio-3207, we conclude Ohio law applies to Continental's CGL policy. In Amore, we addressed the same business auto policy, under consideration in appellees' First Assignment of Error, issued by Continental to The Thomson Corporation. In concluding Ohio law applied to Continental's business auto policy, we reviewed the Ohio Supreme Court's decision in Ohayon v.Safeco Ins. Co. of Illinois, 91 Ohio St.3d 474, 2001-Ohio-100. The Ohayon decision resolved the choice-of-law issue by examining the factors contained in the Restatement of Conflict, Section 188, and held as follows:
 {¶ 24} "* * * [I]n the absence of an effective choice of law by the parties, their rights and duties under the contract are determined by the law of the state that, with respect to that issue, has `the most significant relationship to the transaction and the parties.' Restatement at 575, Section 188(1). To assist in making this determination, Section 188(2)(a) through (d) more specifically provides that courts should consider the place of contracting, the place of negotiation, the place of performance, the location of the subject matter, and the domicile, residence, nationality, place of incorporation, and place of business of the parties." Id. at 477.
 {¶ 25} Based upon the above factors, we concluded, in Amore, that Ohio had significant contact with the subject matter of the policy so as to permit Ohio law to apply. Amore, supra, at ¶ 26. For the same reason discussed, in Amore, we also conclude Ohio law applies to the CGL policy issued by Continental to The Thomson Corporation.
 {¶ 26} Continental next maintains that even if Ohio law applies, the CGL policy is not a motor vehicle liability policy subject to the offer requirements of R.C. 3937.18. Specifically, Continental maintains the inclusion of "valet parking" and "mobile equipment" provisions do not transform the CGL policy into a motor vehicle liability policy.
 {¶ 27} We have previously addressed this issue and concluded "valet parking" and "mobile equipment" provisions contained in a CGL policy does not transform the policy into a motor vehicle policy which requires the mandatory offering of UM/UIM coverage. See Szekeres v. StateFarm Fire Cas. Co., Licking App. No. 02CA00004, 2002-Ohio-5989;Jett v. State Auto Mut. Ins. Co., Stark App. No. 2002CA00183,2002-Ohio-7211; Werstler v. Westfield Ins. Co., Stark App. No. 2002CA00227, 2003-Ohio-1715; Heidt v. Fed. Ins. Co., Stark App. No. 2002CA00314, 2003-Ohio-1785. Accordingly, Continental's CGL policy is not a motor vehicle policy and it was not required to offer UM/UIM coverage per R.C. 3937.18.
 {¶ 28} Continental's Second Assignment of Error is sustained, in part, as it pertains to the issue of whether the CGL policy is a motor vehicle policy.
 V {¶ 29} Having determined appellees are not entitled to UIM coverage under Continental's CGL policy, we will next address Continental's Fifth Assignment of Error as we find it dispositive of the coverage issue as it pertains to the business auto policy. In this assignment of error, Continental maintains the trial court erred when it failed to set off the tortfeasor's limits from the limits of any of its policies found to provide coverage.
 {¶ 30} For purposes of this assignment of error, we will assume coverage exists under the business auto policy, that Ohio law applies and that appellees' notice was timely. However, under these assumptions, after calculating set off, Appellee Dan Hendry would not be entitled to any proceeds from the business auto policy.
 {¶ 31} The record indicates the trial court concluded Appellee Dan Hendry's arbitration award would be reduced to $2,850,000 based upon the set off for money previously received. Judgment Entry, Nov. 4, 2002, at 2. Further, since the policy limits, for the business auto policy and CGL policy total $2,000,000, the court determined Appellee Hendry was entitled to the full $2,000,000 under Continental's policies since the arbitration award, after set off, still exceeds the limits of Continental's policies. Id.
 {¶ 32} We conclude the trial court erred when it calculated setoff in this matter. R.C. 3937.18(A)(2) requires an insurer providing underinsured motorist coverage to set off, from its policy limits, any sum available for payment from the tortfeasor. This section of the statute specifically provides:
 {¶ 33} "* * * The policy limits of the underinsured motorist coverage shall be reduced by those amounts available for payment under all applicable bodily injury liability bonds and insurance policies covering persons liable to the insured."
 {¶ 34} In Clark v. Scarpelli, 91 Ohio St.3d 271, 2001-Ohio-39, the Ohio Supreme Court addressed the meaning of the phrase "amounts available for payment." The court held that for purposes of setoff, "* * * the `amounts available for payment' language in R.C. 3937.18(A)(2) means the amounts actually accessible to and recoverable by an underinsured motorist claimant from all bodily injury liability bonds and insurance policies (including from the tortfeasor's liability carrier.)" Id. at syllabus.
 {¶ 35} Pursuant to R.C. 3937.18(A)(2), the trial court should have calculated setoff by reducing the amounts available for payment from Continental's business auto policy, not from the amount awarded by the arbitration panel. The trial court calculated setoff in the amount of $1,250,000. We previously determined, in the Second Assignment of Error, that Continental's CGL policy is not a motor vehicle policy subject to the mandates of R.C. 3937.18. Accordingly, only $1,000,000 is available under the business auto policy. Since the amount already received by Appellee Dan Hendry, $1,250,000, exceeds Continental's business auto policy limit of $1,000,000, we conclude Appellee Dan Hendry is not entitled to coverage under said policy.
 {¶ 36} Continental's Fifth Assignment of Error is sustained.
 I, III, IV, VI {¶ 37} We will not address the merits of Continental's First, Third, Fourth or Sixth Assignments of Error as these assignments of error are moot having determined that Appellee Dan Hendry is not entitled to coverage under either the business auto policy or CGL policy.
 {¶ 38} For the foregoing reasons, the judgment of the Court of Common Pleas,
Stark County, Ohio, is hereby reversed.
By: Wise, J., Farmer, P.J., and Boggins, J., concur.
[1] The issuer of the two policies is Continental Casualty Insurance Company, which was improperly designated, in the complaint, as "CNA Insurance Companies."
[2] Hendry v. CNA Ins. Cos., Stark App. No. 2001CA00261, 2002-Ohio-1585.
[3] Hendry v. CNA Ins. Cos. (July 9, 2002), Stark App. No. 2002CA00182.